O. Dean COUCH, Jr., et al., Appellants,

v.

SOUTHAMPTON CIVIC CLUB et al., Appellees.

No. 3495.

Court of Civil Appeals of Texas.

Waco.

March 20, 1958.

Rehearing Denied May 28, 1958.

Allen & Allen, Houston, for appellants.

Elledge, Urban & Bruce, William ·E. Loose, Houston, Angus McSwain, Jr., Abner V. McCall, Waco, for appellees.

McDONALD, Chief Justice.

This is a case in which the meaning of restrictions imposed upon a residential area is the issue. Parties will be referred to as in the Trial Court. Southampton Civic Club et al. as plaintiffs filed seven separate suits against the defendants herein, to enjoin them from keeping roomers in their homes, alleging and contending that the keeping of roomers in homes located in the Southampton Addition, was violative of the restrictions incorporated in or contained in the deeds to the properties involved. The Trial Court consolidated all seven suits and tried same as a single cause. The Trial Court refused to hold as a matter of law that the restriction permitted residents in the addition to keep roomers; refused to submit to the jury an issue tendered by defendants as to whether the restriction prohibited roomers on defendants' premises; and submitted only to the jury whether the restriction had been waived in the addition. The jury found that the restriction had not been waived and the Trial Court entered judgment for plaintiffs enjoining defendants from keeping roomers in their homes. Defendants appeal, contending: 1) The restriction as a matter of law does not prohibit residents from having roomers in their homes. 2) Whether or not the restriction prohibits roomers is a question of fact which should have been submitted to the jury.

■ At the outset we say that whether or not the restriction prohibits roomers is a question of law and not a question of fact, and hence is not the proper subject for a jury issue. Contention 2 supra is accordingly overruled.

We revert now to the defendants' 1st contention, that the restriction, as a matter of law, does not prohibit residents of the

Southampton Addition from having roomers in their homes.

Pertinent portions of the restrictions herein are:

" * * * That whereas the said First Party has originated a plan or project to purchase, improve and subdivide a high-class residential and business community, * * * "

In Article VI., "Basic Restrictions", after stating that "in furtherance of the plan for the improvement of the property herein described, the following basic restrictions are hereby declared * * * " which are here set out in full:

"(a) That there shall never be erected, permitted, maintained or carried on upon any of said property any saloon, or place for the sale or manufacture for sale of malt, vinous, or spirituous liquors; any foundry, brick yard, cemetery; any establishment for the care or cure of persons affected with tuberculosis, or any institution for the care or restraint of the mentally impaired, or any detention home, reform school, asylum, or any institution of like or kindred nature; nor any slaughter house or tannery or any noxious interest, trade or business.

"(b) That no part of said property shall ever be used for the purpose of wholesale or retail business of any kind excepting such portions as may be especially designated by the First Party * * * ". (It is undisputed that no business designations were ever made).

*"No apartment house or duplex will be permitted in the Addition; the object of this provision being to prohibit multiple housing throughout the entire Addition."*

Controversies arising out of the restrictions covering Southampton Addition have been before the appellate courts on prior occasions.

In Pardo v. Southampton Civic Club, Tex.Civ.App., 239 S.W.2d 141, W/E Refused, the Galveston Court held that use of the property for business purposes was unauthorized and prohibited by the restrictions, and that use of the property for business purposes should be enjoined.

In Rudy v. Southampton Civic Club, Tex.Civ.App., 271 S.W.2d 431, 432, W/E Ref. NRE, this court held that the restriction:

"No apartment house or duplex will be permitted in the Addition; the object of this provision being to prohibit multiple housing throughout the entire Addition",

prohibited the use of the property for apartments.

In the case at bar the facts are undisputed that the defendants were renting rooms in their main dwellings or servants' quarters to students in Rice University.

■ The question for determination here is whether or not the restriction, supra, prohibits the renting of rooms in the home. The restrictions are set forth supra in some detail primarily out of deference for the contention of plaintiffs that the use of the expression "First Party has originated a plan * * * to subdivide a *high-class* residential and business community * *", has some bearing on this case. We do not think that the expression "high-class" adds any restriction to the use of the property other than the restrictions specifically enumerated. See 14 A.L.R.2d p. 1386, and cases there collated.

■ We now examine the restriction:

"No apartment house or duplex will be permitted in the Addition; the object of this provision being to prohibit multiple housing throughout the entire Addition",

in an effort to determine whether or not it prohibits the renting of rooms to Rice students. The record is undisputed and re-

flects that some of the defendants had rented to one student, others to two, others to three, and one to as many as six. The record reflects that there was no cooking; that the students merely rented the room or the right to stay in the room; that the defendants maintained supervision and control over the entire premises; that the renting to the students was incidental to the defendant's enjoyment and occupancy of the house as his or her home.

Plaintiffs contend that the foregoing restriction limits the use of the lot to a *"single family residence"*, and that the renting of rooms to the Rice students by defendants is violative of the restrictions. Plaintiffs further contend that the Rudy and Pardo cases, supra, are directly in point to sustain such contention. We do not so interpret or read the Rudy and Pardo cases, and if such cases do so sustain plaintiffs' contentions, then the language relied on is dicta.

■ In construing the restriction before us we must follow recognized rules of construction or interpretation. The first rule is to seek to arrive at the intention of the parties to the end that their purpose may be effectuated, and the intention of the parties must be gathered from the instrument as a whole. If there is uncertainty, the construction most favorable to the grantee must prevail, for the grantor selects his own language, and the policy of the law frowns upon forfeitures, conditions, and limitations, and favors utmost freedom of titles. Couch v. Southern Methodist University, Tex.Com.App., 10 S.W.2d 973; Settegast v. Foley Bros., 114 Tex. 452, 270 S.W. 1014; Am.Jur., Vol. 14, Sec. 211, p. 620; 14 A.L.R.2d at page 1372; 175 A.L.R. at page 1193.

■■ We have found no case in which the identical restriction under review here has been passed on by any court, as applicable to the keeping of roomers. However, the courts of the country have considered other restrictions of a similar nature to determine whether such restriction prohibited

the keeping of roomers incidental to the principal use of the property as a home. As far as applying the holdings in these cases to the restriction and facts in the case at bar, the cases seem to be in conflict and many of the individual cases are from divided courts. On this point the Supreme Court of Alabama, in Bear v. Bernstein, 251 Ala. 230, 36 So.2d 483, 484, 14 A.L.R.2d 1372, says:

"The fact that eminent courts of our country have entertained diametrically opposing views as to the intent and meaning of such character of restriction but makes it apodictic that such a covenant is to the judicial mind ambiguous and doubtful and emphasizes the necessity of calling into play these well-known rules of construction, resulting in resolving the ambiguity and doubt against the appellee who here seeks to enforce the restraint."

That court then applies the principles of law set forth supra and summarized: Clear and unambiguous language of a covenant in a deed restricting use of the land will be given its manifest meaning, but all doubts and ambiguities must be resolved against the party seeking its enforcement, and construction of the covenant will not be extended by implication to include anything not plainly prohibited.

Our Commission of Appeals, in Austin v. Richardson, Tex.Com.App., 288 S.W. 180, construed the following covenant:

"That the said lot shall never be used for any purposes other than for residence purposes, and that no store, shop, saloon, bakery, apartment house, or other business enterprise shall be conducted or erected thereon",

and said:

"The restriction * * * does not not require that the use of the property for residence purposes be confined to a single family, excluding any person not a member thereof",

and held that the renting of rooms to roomers was not violative of the restriction. See also: 14 A.L.R.2d 1373 et seq.; Baddour v. City of Long Beach, 279 N.Y. 167, 794, 18 N.E.2d 18, 19 N.E.2d 90, 124 A.L.R. 1003 et seq.; Jernigan v. Capps, 187 Va. 73, 45 S.E.2d 886, 175 A.L.R. 1182 et seq.

■ There is no question but that the restriction supra prohibits the use of the property as "apartment houses" or as "duplexes". The restriction so states and this court so held in the Rudy case, supra. We come now to the next sentence in the restriction: "The object of this provision (against apartment houses and duplexes) being to prohibit multiple housing." Of course, erection of duplexes or apartment houses or *use* of the premises as a duplex or an apartment house would constitute multiple housing. Does the use and occupancy of a house as a home by the owner as such—but who rents a room out to a Rice student maintaining control and management over the entire premises and renting the room as only incidental and accessory to his principal use of the premises as his own home, constitute multiple housing? We think not. Multiple means more than one, more than one *household*. These defendants maintained in their "house" only one "housekeeping unit"—namely their own, which they maintained to operate the premises for its basic and principal use, their own home. The renting of the right of occupancy of rooms to single students who operated no housekeeping unit, and under circumstances and conditions wherein even the rented rooms were under the control, supervision and management of the defendants, cannot constitute multiple housing. This seems especially true when the term "multiple housing" is considered in connection with the terms "apartment" and "duplex", which the term "multiple housing" refers and relates back to. "Multiple housing" to us means a single structure designed or used for living quarters for two family housekeeping units. Here we have one family housekeeping unit whose principal use of the premises is occupancy as a home, but who incidental to that

principal use have let out the right of occupancy to *single roomers,* all the while maintaining the control and management of the rooms let (except as to the right of occupancy). We think, under the rules of construction cited, that this falls *short* of two family housekeeping unit occupancy and that the restriction should not be extended by implication to include anything not plainly prohibited. We think that to hold the renting of rooms under the evidence and factual situation as developed in this case at bar would be an unwarranted extension of the restriction. The restriction itself does not by its own express terms prohibit renting of a room. We believe that the language of the restriction at best constitutes a "doubt" as to the intention of the party setting up the restriction, and under the authorities cited, such doubt must be resolved against the extension or broadening of the restriction.

Further to the foregoing, we note that the roomers are Rice students; that the Southampton Addition adjoins the Rice Institute campus; that Rice was established prior to the opening of Southampton Addition and to the making of the restrictions thereon. Had the drafters of the restrictions intended to prohibit the taking of roomers, which is commonplace in a university neighborhood, they would probably have specifically prohibited such. In any event, whether same is prohibited by the restriction seems to us in doubt and as such must be resolved against the restriction.

Plaintiffs contend that under our holding it would be permissible for a landowner to go into the "roomer business" and rent to 100 or 200 roomers. No such situation confronts us here. Under the facts here, each defendant used the premises as his or her home—and incidental and accessory to such use, rented a room or rooms, in no instance to more than six students (three rooms). All we here hold is that the defendants, in this case, have not violated the restriction applicable to the land. As, if, and when, some other landowner rents to 100 persons, 200 persons, or goes into the room rental business, or otherwise violates the restrictions applicable to the property, plaintiffs can have their relief upon a proper showing.

In conclusion, we state that we think the language of the restriction does not clearly prohibit roomers in its language, but to the contrary creates a doubt as to what is intended in this regard. Hence we, under the authorities cited, must resolve the doubt against the restriction, and will not extend it by implication to include anything not plainly prohibited.

The judgment of the Trial Court is accordingly reversed, the injunction against defendants is dissolved, and judgment rendered for defendants.

HALE, J., not participating.