Charles B. CASH, Respondent,

v.

CATHOLIC DIOCESE OF KANSAS CITY–ST. JOSEPH, a Missouri Corporation, Appellant.

No. 24577.

Kansas City Court of Appeals.

Missouri.

April 3, 1967.

Downey, Sullivan & McCormick, Leo McCormick, Kansas City, for appellant.

Charles B. Cash, Kansas City, for respondent.

JAMES W. BROADDUS, Special Commissioner.

On February 19, 1965, plaintiff filed suit in which he sought to enjoin defendant corporation from erecting on property owned by it a building for occupancy by teaching nuns of a parochial school, and from using the same as their residence as being in violation of private real estate restrictions. Plaintiff prevailed below and defendant has appealed.

The facts show that on January 28, 1955, the James H. Stanton Construction Company, Inc., being the then owner of a tract of land in Clay County caused the same to be platted and laid out in lots and blocks and designated as "Sherwood Estates"; said plat was duly filed for record with the Recorder of Deeds of Clay County. On the same date the Construction Company placed certain restrictions on the property then platted as "Sherwood Estates." The Declaration of Restrictions provides that it is binding upon the Construction Company, its successors and assigns, and all parties claiming by, through or under it for a period of 25 years from the date of the instrument.

The restriction which is here involved reads as follows: "The lots shall be used for detached single family dwellings only."

Plaintiff is the owner of Lot 10, Block 15, Sherwood Estates and has erected a house thereon and is occupying the same as a residence for himself and his family. Defendant is the owner of four lots in said subdivision.

The parties stipulated that defendant plans to erect on its property a building for occupancy by teaching nuns of the Roman Catholic Church; that said residence will have nine to eleven residents who are members of a Catholic Religious Order for women; that "said residents will teach in the elementary grade school of St. Gabriel's Catholic Church located on premises separate from that on which faculty residence is to be located. Within said residence will be located separate sleeping rooms and common housekeeping facilities for the residents. In addition there will be located a chapel for the convenience of the residents to meditate and worship in their faith.

"Said residence or Convent is under the supervision and managerial direction of a nun commonly referred to as the 'Mother' or 'Superior' who usually remains in that capacity for a minimum period of one school year. The Mother or Superior sets the usual hours for meals, religious devotion and recreation, both within and without the Convent and is responsible for the management of the Convent's day to day living expenses. All of the nuns residing at the Convent are members of the same order of nuns and are subject to direction of the Mother or Superior and have the obligation of obedience to her while assigned under her care. The Mother or Superior assigns the household duties to various of the nuns according to her judgment and to their capabilities. The nuns take their meals in a common dining room. The meals are prepared under the direction of one of the nuns whose responsibility is the securing of the foodstuff and its preparation for meals. Said nun also has the primary responsibility with regard to the cleaning of clothing and linen and is assisted in these duties by other nuns."

Exhibit B shows the nature of the structure proposed to be erected by defendant. It is to be a full two story building containing 13 bed rooms, plus large central bath and toilet facilities, an office, a chapel, a community room, a parlor, a dining room, kitchen, pantry and storage facilities, plus additional laundry, storage and recreational facilities in the basement. The plot plan indicates that the structure would contain approximately 6,000 square feet of floor space exclusive of the walkout basement area.

█ We are mindful of the general rule relied upon by defendant that restrictive covenants will not be extended by implication to include anything not clearly expressed in them, and if there is substantial doubt of their meaning, such doubt should be resolved in favor of the free use of the property. As stated, however, by this court in the case of Jones v. Haines

Co., Kan., 371 S.W.2d 342: "The principle that restrictions as to the use of real estate should be strictly construed and doubts resolved in favor of the free use of property should never be applied in such a way as to defeat the plain and obvious purpose of the restriction."

█ The rule which governs the instant case was stated by our Supreme Court in the case of Cleaver v. Central States Life Ins. Co., 346 Mo. 548, 142 S.W.2d 474, 129 A.L.R. 1094.

"The test of the meaning of words commonly used should be their ordinary and popular meaning and they should not be construed in the broadest sense possible to include meanings to which they would not be applied by most people."

The Trial Judge in his "Reasons for Decision" stated:

"Would most people in this community understand 'single family dwelling' to include the proposed building? If we can answer that question, the dictionary definitions of the individual words become unimportant.

"Many words have one or more restricted or specific meanings, as well as a more general meaning that includes more than one of the specific meanings. But 'popular' usage has a tendency to confine the use of a word to only one meaning, unless there is a clear contrary indication from the context or circumstances. This is frequently accomplished by a process of elimination by which popular usage accepts *other* words to express all the meanings, except one. The word 'building' includes, among others, (1) a structure by which an area or areas is enclosed by floors, walls, ceilings and roofs, (2) a structure which permits a train to traverse a river and (3) a structure which supports a flag at its top. But in popular usage, most people would think you intended the first meaning if you used the word. They would expect you to say 'railroad bridge' and 'flagpole' if you intended to convey the latter two

meanings. 'Highway' may be used to describe any way open to the public, but its popular meaning has been restricted by the use of such words as 'street', 'boulevard', 'avenue', 'sidewalk', 'footbridge,' etc.

"With regard to the use to which a building is put, there is in popular usage many words and combinations of words which permit us to be specific, and make it unnecessary to rely on broad and all-inclusive words and expressions. We have office buildings, hospitals, courthouses, taverns, clothing stores, supermarkets, etc. To describe places where people live we have the words home, residence, dwelling, single family dwelling, two family dwelling or duplex, flat, apartment building, hotel, motel, inn, rooming house, boarding house, sorority house, fraternity house, club, barracks, and possibly others.

 "There can be no argument with the proposition that a building for occupancy by a group of people, all of whom are related to one another by blood or marriage, might properly be described as a 'single family dwelling'. We believe that the proposed residence for nuns may not be so described, if for no other reason, because there are in common use other words that describe such a building without resort to a word that has another widely accepted meaning. The residence for nuns might be described as a boarding house, sorority, or club. Or if one wanted to emphasize the religious status which its occupants would have in common, one might call it a convent, as it is described in Exhibit B, an architect's plan of the proposed building. But would most people describe the nuns that live there at a particular time as a 'family' or their residence as a 'single family dwelling'? We think not."

Your Special Commissioner has reached the same conclusion.

The parties have cited a number of decisions in which the Court interprets the word family. Most of those cases are from other jurisdictions. They are distinguish-able from the instant case. The language which the courts were called upon to construe in the cases was not the same as in the instant case, and in some of them there were circumstances which controlled the meaning of the word, such as the purpose of a statute including the word, or a definition contained in the same ordinance in which the word appeared.

Your Special Commissioner recommends that the judgment be affirmed.

PER CURIAM:

The foregoing opinion is adopted as the opinion of the Court and the judgment is affirmed.

All concur.