**Leland Lester SHAVER, Appellant,**

v.

**Bob L. HUNTER, et al., Appellees.**

**No. 9320.**

Court of Appeals of Texas,
Amarillo.

Dec. 3, 1981.

Rehearing Denied Dec. 28, 1981.

Renea Hicks, Austin, for appellant.

Carr, Evans, Fouts & Hunt, Donald M. Hunt, Lubbock, for appellees.

Before REYNOLDS, C. J., and DODSON and COUNTISS, JJ.

DODSON, Justice.

As plaintiffs, Bob L. Hunter, John Zakrasek, Osco Abney, D. D. Tibbets and Myron Hart brought this action seeking, among other things, to enjoin Leland Lester Shaver, the defendant, from violating the "single family residency" use requirements of a restrictive covenant imposed on Virginia Place Addition, a Lubbock subdivision. The plaintiffs are homeowners in the subdivision. The defendant owns a corner lot and approximately one half of another adjacent lot in the subdivision. A single family residence is situated on the corner lot.

The defendant leases all of his property to the Lubbock Area Extended Rehabilitation Services, a non-profit corporation. In conjunction with the Texas Rehabilitation Commission, the corporation uses the property to provide sheltered living arrangements for severely handicapped persons. At the time of trial, the residence was occupied by a health care provider employed and paid by the commission and three handicapped clients of the corporation. The occupants are unrelated single young women. The three clients pay rent to the corporation, which in turn pays the rent to the defendant.

The covenant which plaintiffs sought to enjoin defendant from violating primarily restricted all lots in Virginia Place to use for residential purposes only, specifying that a residence shall be construed to be a single family dwelling. Concluding that the use of the property did not comply with the single family residency requirements, the trial court enjoined the defendant from violating the restrictive covenant. The defendant appeals from the judgment and we affirm.

The defendant presents three points of error. With his first point, the defendant maintains that the use of the property in question complied with the restrictive covenant because "the house is a single family dwelling being used for residential purposes and the covenant does not reach beyond this prohibition." In effect, the defendant contends that the restrictive covenant limits only the construction of dwellings and not their use and occupancy.

We acknowledge that when the covenant restricts the form or character of the structure rather than limiting the use of the property to a single family residence, some courts refuse to enjoin group home living arrangements where the group functions as a single household unit. *See J. T. Hobby & Son, Inc. v. Family Homes Etc.*, 274 S.E.2d 174 (N.C.1981), (a married couple as resident managers and four mentally handicapped adults); *Malcolm v. Shamie*, 290 N.W.2d 101 (Mich.App.1980), (foster parent and five mentally handicapped women, with the court limiting its decision to "the same or very similar factual situations"); *Bellarmine Hills Ass'n v. Residential Systems Co.*, 84 Mich.App. 554, 269 N.W.2d 673 (1978), (a foster parent and fewer than six mentally handicapped children, where the children temporarily resided on the property in order to attend special classes).

Our analysis of similar cases further reveals that when the restrictive covenant limits the use of a piece of property to one single family residence rather than merely prescribing the form or character of the structure that can be built on that property the courts enjoin the group home living arrangement, commercial activity, and any living arrangement other than that of a single family residence. *See Jayno Heights Landowners Ass'n v. Preston*, 85 Mich.App. 443, 271 N.W.2d 268 (1978), (group home for elderly women); *Cash v. Catholic Diocese of Kansas City—St. Joseph*, 414 S.W.2d 346 (Mo.App.1967), (Mother Superior and eight to ten nuns); *Seaton v. Clifford*, 100 Cal. Rptr. 779, 24 Cal.App.3d 46 (1972), (homeowner and six or fewer mentally handicapped persons); *Davis v. Hinton*, 374 S.W.2d 723, 726 (Tex.Civ.App.—Tyler 1964,

writ ref'd n. r. e.), (premises occupied by business tenants and a lodger).

In support of his position, and relying on *MacDonald v. Painter*, 441 S.W.2d 179, 183 (Tex.1969), and *Southampton Civic Club v. Couch*, 159 Tex. 464, 322 S.W.2d 516, 518 (1958), the defendant asserts that "restrictions are construed strictly in favor of the grantee and against the grantor and in favor of the free and unrestricted use of the property." In *Southampton*, the rule is properly stated "that in construing covenants restricting the use of land all *doubt* should, as a general rule, be resolved in favor of the freer use of property and against restrictions." (Emphasis added). *Id.* However, the general principle stated in *Southampton* should not be applied in such a way as to defeat the clear intent and the plain and unambiguous purpose expressed in the restriction. *See Stephenson v. Perlitz*, 532 S.W.2d 954, 956 (Tex.1976); and *Knopf v. Standard Fixtures Co., Inc.*, 581 S.W.2d 504 (Tex.Civ.App.—Dallas 1979, no writ).

The covenant in question provides that all lots shall be used for residential purposes only and states that a "residence shall be construed to be a single family dwelling." The clear intent and the plain and unambiguous purpose expressed in the covenant is to restrict the use of the property to a single family residence. In *Davis v. Hinton*, 374 S.W.2d 723 (Tex.Civ.App.—Tyler 1964, writ ref'd n. r. e.), the court construed a restrictive covenant identical in effect to the covenant before us. In *Davis*, the appellant made the same challenge that the defendant asserts here. In disposing of the appellant's challenge, the court determined that the covenant limited the use of the property to a single family residence rather than merely prescribing the form or character of the structures that could be built on the property.

The court's determination in *Davis* was predicated on the general rule that as employed in building restrictions the words "dwelling house" are, in the absence of anything to the contrary, construed in their

ordinary sense as a house occupied as a residence rather than as a store, office or other building; and that the term defines the *use* of the property rather than merely the form or character of the structure. *Id.* at 726. In the present case we conclude that the clear intent and the plain and unambiguous purpose expressed in the restrictive covenant in question is to limit the use of the property to a single family residence rather than merely to prescribe the form or character of the structure. The defendant's first point is overruled.

 In his second point of error, the defendant maintains that the trial court erroneously failed to conclude that the people occupying the property constitute a single family and, therefore, their use of the property is permissible under the restrictive covenant. In essence, he contends that the four unrelated single women constitute a single housekeeping unit and that the housekeeping unit constitutes a single family within the covenant's meaning. We disagree.

When construing restrictive covenants which limit the use of property to "single family residence," the courts generally construe the term to mean a "nuclear family" or an "extended family." The "nuclear family" consists of only "parents, children, and domestic servants." *See Rudy v. Southampton Civic Club*, 271 S.W.2d 431, 435 (Tex.Civ.App.—Waco 1954, writ ref'd n. r. e.). Generally, the "extended family" consists of a nucleus group of persons related by blood, marriage or adoption which may include parents, children and collateral kinsmen such as grandparents, grandchildren, uncles, aunts, nieces and the like. This family group is often extended to include the family's domestic servants and incidental boarders and lodgers. Annot., 71 A.L.R.3d 693, 699 (1976). *Cf. Southampton Civic Club v. Couch*, 159 Tex. 464, 322 S.W.2d at 518.

The defendant primarily relies on the *City of White Plains v. Ferraioli*, 357 N.Y. S.2d 449, 34 N.Y.2d 300, 313 N.E.2d 756 (1974), to support his position that the young women's living arrangement constitutes a single family residence within the meaning of the restrictive covenant. In *Ferraioli*, the court construed a city zoning ordinance. The Ferraioli house was located in an R–2 zone of the city where the principal permitted uses were "a 'Single family dwelling for one housekeeping unit only,' fire houses, police stations, public schools and churches." In the zoning ordinance, "family" was defined as "one or more persons limited to the spouse, parents, grandparents, grandchildren, sons, daughters, brothers or sisters of the owner or the tenant or of the owner's spouse or tenant's spouse living together as a single housekeeping unit with kitchen facilities." We observe that this definition basically follows the "extended family" view.

The Ferraiolis leased their house to Abbott House, Inc., a private agency licensed by the state of New York to care for neglected and abandoned children. The occupants of the house consisted of an adult couple, their two children and ten foster children. The adult couple was paid a salary to care for the foster children and all of the household expenses were paid by Abbott House with funds received from the city of New York. The court stated that the living arrangement was permanent and *"akin to a traditional family* which also may be sundered by death, divorce, or emancipation of the young. Neither the foster parents nor the children are to be shifted about; the intention is that they remain and develop ties in the community. *The purpose is to emulate the traditional family and not to introduce a different 'life style'."* (Emphasis added). The court distinguished this living arrangement from a temporary one such as a group of college students sharing a house and commuting to a nearby school, or a "so-called 'commune' style of living." The court determined, as a matter of law, that the group in question constituted a family for the purposes of the zoning ordinance.

As we analyze *Ferraioli*, the court by judicial fiat (1) amended the zoning ordinance's definition of "family" by adding "foster children"; (2) extended the "ex-

tended family" view to include foster children; and (3) in effect, advanced an "alternative" or "emulated" family view. In the present case, *Ferraioli* is neither controlling nor persuasive. Here, the construction of the restrictive covenant is controlled by the definition of family set out in *Southampton Civic Club v. Couch*, 159 Tex. 464, 322 S.W.2d at 518.

In *Southampton*, the court construed a restrictive covenant which limited the use of the property to single family residence purposes. Seven suits were filed and consolidated for trial. The relief sought in each case was to restrain the defendant-owner from renting a room or rooms in his residence for lodging. Most of the lodgers were students at Rice Institute. The trial court concluded that the renting of rooms to the students violated the restrictive covenant, but submitted to the jury the defendant's waiver issues. The jury found no waiver. The trial court rendered judgment enjoining the owners from violating the restrictive covenant. The Court of Civil Appeals, 313 S.W.2d 360, 365, reversed the trial court's judgment, dissolved the injunction and rendered judgment for the defendant-owners.

In the Supreme Court, the petitioners relied on the "nuclear family" definition in *Rudy v. Southampton Civic Club*, 271 S.W.2d at 435. The Supreme Court disapproved of that definition (*i.e.*, "parents, children, and domestic servants") as being "entirely too restrictive" because "it would exclude a dependent mother or an invalid brother or sister." 322 S.W.2d at 518, 159 Tex. 464. In further disposing of the petitioner's position, the court stated that the generally accepted definition of the word "family" is "a household, including parents, children and servants, and, as the case may be, lodgers or boarders." *Id.* The court determined that the restrictive covenant was not violated by a family incidentally renting a spare room in its single family residence. In effect, the court rejected the limited "nuclear family" view and adopted the less restrictive "extended family" view. The Supreme Court affirmed that part of the Court of Civil Appeals' judgment which reversed the trial court's judgment and dissolved its injunction, and remanded the action for a determination of whether the homeowners were operating commercial boarding houses.

In this instance, the occupants of the property in question do not constitute a family under the *Southampton* definition. We have not been directed to, nor have we found, a Texas case decided since *Southampton* which even suggests or intimates that the definition should be extended to include four unrelated single adults. Accordingly, we overrule the defendant's second point of error.

In his third point of error, the defendant maintains that the restrictive covenant in question is unreasonable and against public policy and, therefore, is unenforceable in this case. In effect, the defendant contends that for public policy considerations, his use of the property is entitled to preferred treatment because the property is used to provide a sheltered living arrangement for three mentally or physically handicapped persons. We disagree.

In support of his position, the defendant cites general policy statements from federal and state legislation.* In each instance, among other things, the legislation was enacted to encourage the de-institutionalization of handicapped persons. Viewed broadly, the legislation in each instance was also enacted to encourage and to assure equal protection of the law to the handicapped person. Otherwise, the legislation would be subject to unnecessary constitutional scrutiny under the due process of law clause of the 5th and 14th Amendments and the equal protection clause of the 14th Amendment of the United States Constitution.

The State's action in enforcing a restrictive covenant is subject to constitu-

---

* 42 U.S.C. 6010(2) (The Developmentally Disabled Assistance and Bill of Rights Act); and sections 2(a), (b) & (c), and 7, Article 5547–300 (Mentally Retarded Persons Act of 1977).

tional scrutiny under the 14th Amendment's equal protection clause. *See Shelley v. Kraemer*, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1947). For us to follow the defendant's contention, we would have to say to the property-owner plaintiffs, "You can enforce the restrictive covenant against all non-single family residence uses except such living arrangements which include handicapped persons." That type of selective enforcement and preferred treatment to the handicapped would not pass constitutional muster. *See University of California Regents v. Bakke*, 438 U.S. 265, 293–98, 98 S.Ct. 2733, 2749–50, 57 L.Ed.2d 750 (1978), particularly that portion of Mr. Justice Powell's opinion when, speaking for the majority in this landmark reverse discrimination case, he addresses the "serious problems of justice connected with the idea of preference itself." *Id.* at 298, 98 S.Ct. at 2750. We overrule the defendant's third point of error.

In their first amended petition, the plaintiffs sought injunctive relief against the defendant under the zoning ordinances of the City of Lubbock. The trial court determined that the plaintiffs did not have standing to enforce the City's zoning ordinances. By cross-point, the plaintiffs challenge the trial court's determination. In view of our disposition of the defendant's three points of error, we deem it unnecessary to consider the plaintiffs' cross-point.

The judgment is affirmed.

COUNTISS, Justice, concurring.

I concur in the opinion of the court. It correctly analyzes and resolves the points of error under existing Texas law. If, however, the definition of "family" as used in a restrictive covenant were an open question, I would reverse this case under the second point of error.

We are obligated to follow the definition of "family" that is stated in *Southampton Civic Club v. Couch*, 159 Tex. 464, 322 S.W.2d 516 (1958). Although that definition is imprecise at best, it clearly does not encompass the living arrangement in question here. The definition is, however, unrealistic and unduly restrictive. Certainly a family structured in the traditional sense is a desirable societal arrangement that promotes stability and imparts sound values, but I think it is wrong to conclude that it is the only societal arrangement entitled to be recognized as a family. The reasons for a broader definition are adequately stated in *Smith v. Org. of Foster Families for Equality & Reform*, 431 U.S. 816, 843, 97 S.Ct. 2094, 2109, 53 L.Ed.2d 14 (1977); *Crowley v. Knapp*, 94 Wis.2d 421, 288 N.W.2d 815 (Wis. 1980); *Berger v. State*, 71 N.J. 206, 364 A.2d 993 (1976); *City of White Plains v. Ferraioli*, 357 N.Y.S.2d 449, 34 N.Y.2d 300, 313 N.E.2d 756 (1974); and Developments— The Family, 93 Harv.L.R. 1156, 1218, 1270–83 (1980), and need not be repeated here.

Consistent with the foregoing authorities, I would prefer to define "family" as a stable housekeeping unit of two or more persons who are emotionally attached to each other and share a relationship that emulates traditional family values, promotes mutual protection, support, happiness, physical well-being and intellectual growth and is not in violation of the penal laws. Under that definition, the housemother and her three charges in this case would be permitted to remain in the dwelling in question.

The appellees in this case are justifiably concerned about maintenance of the integrity of their neighborhood. It seems to me, however, that the neighborhood is in no more danger from the definition I suggest than from the *Southampton Civic Club* definition, under which one or more parents, an unlimited number of children, servants and collateral kin and an undetermined number of lodgers or boarders could reside in a single dwelling.

For the foregoing reasons I concur in the opinion of the court, but would reach a different result if we were not obligated to follow the *Southampton Civic Club* case.