D. Wayne COLLINS, et al., Appellants,

v.

CITY OF EL CAMPO, Texas, et al., Appellees.

No. 13–83–528–CV.

Court of Appeals of Texas, Corpus Christi.

Oct. 25, 1984.

Rehearing Denied Nov. 20, 1984.

Dayle Bebee, Renea Hicks, Advocacy, Inc., Austin, for appellants.

Tom Robins, Victoria, Wilson M. Rutherford and Richard B. Collins, El Campo, for appellees.

Before UTTER, YOUNG and KENNEDY, JJ.

## OPINION

UTTER, Justice.

Three sets of plaintiffs (The City of El Campo (City), Subdivision Plaintiffs and Non-Subdivision Plaintiffs) brought suit against appellants to permanently enjoin the use of the Collins' property as a residence for four unrelated, mentally retarded men and their supervising houseparents. The City and the Non-Subdivision Plaintiffs, who own four homes in a neighboring subdivision and within close proximity to the Collins' property, claimed that the use of the residence as a "group home" violated the City's zoning ordinance. The Subdivision Plaintiffs, who own eight homes in the same subdivision, claimed that the use of the residence as a "group home" violated the subdivision's restrictive covenant as well as the City's zoning ordinance. In addition to seeking a permanent injunction, the Subdivision Plaintiffs also sought special damages and attorney's fees for their enforcement of the restrictive covenant.

After a non-jury trial, the trial court found that the use of the Collins' property was in violation of both the zoning ordinance and the restrictive covenant and granted the plaintiffs' request for permanent injunction. The trial court further awarded special damages and attorney's fees to the Subdivision Plaintiffs. We reverse the judgment of the trial court.

The Collinses are the owners of residential property located in the Weslayan Terrace Subdivision in El Campo, Texas. On August 15, 1982, the Collinses, as lessors, leased their property to the Advisory Board of the El Campo Area Adult Center for the Developmentally Disabled, Inc., for the purpose of establishing a group home for not more than four mentally retarded adults, plus one supervising couple. In September, 1982, the four unrelated, mentally retarded men, along with their two supervising houseparents, moved into the house on the Collins' property. The same four men, plus their two houseparents, have been living in the home since September, 1982. Even though the four men are free to move out of the home at their discretion, they have chosen not to do so. The evidence indicates that the living arrangement is a permanent and not a temporary one.

The establishment of the home was intended to provide a "home-like" atmosphere within the community for the "the deinstitutionalization" or "normalization" of the four mentally retarded men. The purpose of the home was to use daily living experiences to help the mentally retarded residents learn to live within a normal home-living situation. The evidence shows that the four men and their houseparents reside together in the home and function as a "single housekeeping unit". The houseparents have one bedroom, and two men share each of the other two bedrooms. The household chores, including dusting, sweeping, making their beds, washing clothes, making menus, grocery shopping and preparing meals, are shared among everyone in the home. The household members plan their activities together.

The Collins' house is a single-story brick structure with a large front yard and a fenced-in back yard. It is undisputed that the home structure was designed for use as a "single-family dwelling". Architecturally speaking, the home structure is similar to other "single-family dwelling" structures in the same neighborhood.

At the time of the alleged violation of the City's zoning ordinance, the home was situated within an area zoned by the City as an "R–1" Single-Family Residence District. Section 6 of the City of El Campo Zoning Ordinance, in pertinent part, provided:

Part II. DISTRICT USE AND AREA REGULATIONS

Section 6. "R–1" Single-Family Residence District

6–1. The regulations set forth in this section or set forth elsewhere in this ordinance when referred to in this section, are the regulations in the "R–1" Single-Family Reidence (sic) District.

*Use regulations:* A building or premise shall be used only for the following purposes:

 A. One Family Dwelling.

Section 2–15 of the zoning ordinance defined a "single-family dwelling" as follows:

*2–15. Dwelling, Single-Family:* A building designed for *or* occupied exclusively by one (1) family. (Emphasis added.)

In their first point of error, appellants contend that the zoning ordinance should be interpreted to where the "One Family Dwelling" use regulation of Section 6–1 can be satisfied through one of two alternative ways: the dwelling must be (a) "designed for ... one (1) family" *or* (b) "occupied ... by one (1) family", pursuant to the definition of the term "single-family dwelling," as set forth in Section 2–15 of the zoning ordinance.

███ In construing a municipal ordinance, the primary duty of a court is to carry out the intentions of the municipal legislative body. *Bolton v. Sparks,* 362 S.W.2d 946 (Tex.1962). The same rules apply to the construction of municipal ordinances as apply to the construction of statutes. *Mills v. Brown,* 159 Tex. 110, 316 S.W.2d 720 (1958). In construing a statute or ordinance, a court must look to the wording of the entire statute or ordinance, not to just one word or phrase therein, in order to determine the underlying intent. *Citizens' Bank of Bryan v. First State Bank, Hearne,* 580 S.W.2d 344 (Tex.1979); *Ex Parte Roloff,* 510 S.W.2d 913 (Tex. 1974); *Jackson County Hospital District v. Jackson County Citizens for Continued Hospital Care,* 669 S.W.2d 147 (Tex.App.— Corpus Christi 1984, no writ).

█ If the language of the statute or ordinance is susceptible of two constructions, as in the instant case, then the construction of the statute or ordinance which will carry out the manifest purpose of the statute or ordinance should be followed. *Citizens' Bank of Bryan v. First State Bank, Hearne,* 580 S.W.2d 344 (Tex.1979).

█ It is clear that the Collins' home meets the definition of a "One Family Dwelling" or "single-family dwelling," as defined in Section 2–15 of the zoning ordinance; however, in accordance with the manifest purpose and the clear intention of the El Campo municipal legislative body behind the enactment of the zoning ordinance, it is not the *structure* upon but the *use* of the property within a "R–1" Single-Family Residence District which is restricted. Such manifest purpose and intention are clearly evident from the language of Section 6–1 itself, which, in pertinent part, mandates the following:

*Use regulations:* A building or premises *shall be used only* for the following purpose:

 A. One Family Dwelling.

(Emphasis added.)

Therefore, the fact that the Collins' house was "designed for ... one (1) family" does not satisfy the *use* restrictions of the zoning ordinance, absent the property's actual *use* as a "One Family Dwelling" or "single-family dwelling." Appellants' first point of error is overruled.

In their second point of error, appellants contend that the use of their property complied with the restrictions of the zoning ordinance because the house was occupied by one "family," as defined in the zoning ordinance. Section 2–18 of the zoning ordinance defined "family" as follows:

2–18. Family: One or more persons occupying a dwelling and living as a single housekeeping unit and doing their own cooking on the premises, as distinguished from a group occupying a boarding, lodging house, or hotel, as herein defined.

There is no requirement in Section 2–18 that the parties occupying a dwelling and living as a "single housekeeping unit" be related by blood or marriage.

While the home may be properly called a "group home," we hold that it is clear that the home does not qualify as a boarding house, lodging house or hotel, as defined in the zoning ordinance, and which are prohib-

ited in a "R–1" Single-Family Residence District.[1]

■ The evidence presented at trial clearly demonstrated that the four unrelated men, who are mentally retarded, plus their two supervising houseparents, constitute a "family," as defined in Section 2–18 of the zoning ordinance. *See Mongony v. Bevilacqua*, 432 A.2d 661 (R.I.1981); *Oliver v. Zoning Commission*, 31 Conn.Sup. 197, 326 A.2d 841 (1974); *Saunders v. Clark County Zoning Department*, 66 Ohio St.2d 259, 421 N.E.2d 152 (1981); *Costley v. Caromin House, Inc.*, 313 N.W.2d 21 (Minn.1981); *Linn County v. City of Hiawatha*, 311 N.W.2d 95 (Iowa 1981); *Missionaries of Our Lady of La Salette v. Village of Whitefish Bay*, 267 Wis. 609, 66 N.W.2d 627 (1954); *Douglas County Resources, Inc. v. Daniel*, 247 Ga. 785, 280 S.E.2d 734 (1981); *Carroll v. City of Miami Beach*, 198 So.2d 643 (Fla.Dist. Ct.App.1967). Appellants' second point of error is sustained.

At the time of the alleged violations, a restrictive covenant was imposed upon the lots, including the Collins' property, in Weslayan Terrance Subdivision. The restrictive covenant, in pertinent part, provided:

## USE OF LAND

1. Said lot *shall be used for residential purposes only*, and nothing shall be done thereon which may be or become an annoyance or nuisance to the neighborhood and no part of said premises shall be used for the commercial treatment of tuberculosis or any other contagious or infectious disease ...

## ARCHITECTURAL RESTRICTIONS

1. No more than *one family dwelling* shall be erected on one lot as per plat of said addition.

2. All necessary or desired garage, servants quarters, laundries, storage buildings and another outbuildings may be constructed subject to the other provisions of these general restrictions.

3. On all residential building lots, no structures shall be erected thereon other than *one single family dwelling* not to exceed two stories in height and a private garage for not more than four cars, servant or guest quarters, storage room and laundry room; provided, however, that no garage, servant quarters, storage and laundry rooms, shall be erected on any *one family residential building lot* simultaneously with or subsequent to the building *a single family dwelling* thereon in keeping with these restrictions. (Emphasis added.)

In their third point of error, appellants contend that the restrictive covenant should be construed to require that the property be "used for residential purposes only," without qualification. Appellants note that the restrictive covenant is divided into two basic parts, as evidenced by the headings "USES OF LAND" and "ARCHITECTURAL RESTRICTIONS." Appellants further note that the term "single family" appears only within the part of the restrictive covenant entitled "ARCHITECTURAL RESTRICTIONS" and suggest that, each time the term "single family" appears therein, it is used as an adjective describing a structure and not a use of a structure. Consequently, appellants argue that the only restricted use, which is imposed on the property through the "USES OF LAND" part of the restrictive cove-

1. 2–8. *Boarding House:* A building other than a hotel where, for compensation and by arrangement, meals or lodging and meals are provided by three (3) or more persons, but does not exceed twenty (20) persons.

2–26. *Hotel:* A building in which lodging or boarding and lodging are provided and offered to the public for compensation and in which ingress and egress to and from all rooms is made through an inside lobby or office super-

vised by a person in charge at all hours. As such, it is open to the public in contradistinction to a boarding house, a lodging house, or an apartment which are here and separately defined.

2–30. *Lodging House:* A building other than a hotel where lodging for three (3) or more persons is provided for compensation pursuant to a previous arrangement and not to anyone who may apply.

nant, is that the property be "used for residential purposes only," without qualification.

■■■ A restrictive covenant must be construed strictly. If there is any ambiguity in the terms of the restrictions or substantial doubt of the meaning of such terms, such ambiguity or substantial doubt, as a general rule, should be resolved in favor of the freer use of the property and against the restrictions. *Davis v. Huey,* 620 S.W.2d 561 (Tex.1981); *Southampton Civic Club v. Couch,* 159 Tex. 464, 322 S.W.2d 516 (1958); *Travis Heights Improvement Association v. Small,* 662 S.W.2d 406 (Tex.App.—Austin 1983, no writ). However, the general rule stated above should not be applied in such a way as to defeat the clear intent and the plain and unambiguous purpose expressed in the restriction. *Shaver v. Hunter,* 626 S.W.2d 574 (Tex.App.—Amarillo 1981, writ ref'd. n.r.e.); *See Davis v. Huey,* 620 S.W.2d 561 (Tex.1981); *Stephenson v. Perlitz,* 532 S.W.2d 954 (Tex.1976).

Appellees argue that the same issue was presented in *Shaver v. Hunter,* 626 S.W.2d 574 (Tex.App.—Amarillo 1981, writ ref'd. n.r.e.), wherein the Amarillo Court of Appeals stated:

The covenant in question provides that all lots shall be used for residential purposes only and states that a "residence shall be construed to be a single family dwelling."

*Shaver v. Hunter,* 626 S.W.2d at p. 576–577.

However, the Amarillo Court of Appeals in *Shaver v. Hunter* did not quote in its opinion the pertinent provisions of the subject restrictive covenant. The only statement regarding the contents of the restrictive covenant, which was before the Amarillo Court, was that the provisions of the restrictive covenant were "identical in effect" to the restrictive covenant in *Davis v. Hinton,* 374 S.W.2d 723 (Tex.Civ.App.—Tyler 1964, wit ref'd. n.r.e.). In *Davis v. Hinton,* the subject restrictive covenant was quoted, as follows:

"1. All lots in the Tract shall be known and described as residential lots. No structure shall be erected, altered, placed or permitted to remain on any residential building plot other than the 1 detached single-family dwelling not to exceed two stories in height and a private garage for not more than two cars and other necessary outbuildings incidental to single-family use";

"3. No obnoxious or offensive trade or activity shall be carried on upon any lot nor shall anything be done thereon which may be or become an annoyance·or nuisance to the neighborhood."

*Davis v. Hinton,* 274 S.W.2d at pp. 724–725.

In analyzing the opinions in both *Shaver v. Hunter* and *Davis v. Hinton,* it is clear that both the Amarillo Court and the Tyler Court based their opinions on the failure of the parties to use the property as "single-family" residences as set forth in the restrictive covenants. Both Courts emphasized the fact that it was not the form or character of the structure but the actual use of the structure which determined whether there was a violation of the subject restrictive covenants.

■■■ Unlike the restrictive covenants in *Davis v. Hinton* and *Shaver v. Hunter,* the only references to the term "single-family dwelling" in the restrictive covenant in the instant case appears in the part of the restrictive covenant entitled "ARCHITECTURAL RESTRICTIONS," the provisions of which obviously were intended to prescribe the form or character of any structure to be built upon the property. The only restriction imposed on the use of the property appears in the part of the restrictive covenant "USES OF LAND," which provides that the subject property shall be "used for residential purposes only." It is undisputed that the home structure in question was designed for use as a "single-family dwelling," and, architecturally speaking, the home structure is similar to other "single-family dwelling" structures in the same neighborhood. Since the evidence shows that the home is "used for

residential purposes only" by the four men and their supervising parents, there is no violation of the pertinent provisions of the restrictive covenant. Appellants' third point of error is sustained.

In their fourth point of error, appellants contend that the trial court erroneously failed to conclude that the people occupying the property constituted a "single family"; therefore, if the restrictive covenant in question required that the property be used as a "single-family dwelling," the use of the property would have been permissible under the restrictive covenant. In light of our disposition of appellants' third point of error wherein we hold that the subject property must be "used for residential purposes only," we need not consider appellants' fourth point of error.

In their fifth through seventh points of error, the appellants assert that (1) the restrictive covenant in question is unreasonable and against public policy thereby making it unenforceable, (2) the zoning ordinance is void for vagueness under the state and federal constitutions and (3) the zoning ordinance and the restrictive covenant are invalid under the due process clauses of the state and federal constitutions.

 Since we have held that appellants were not in violation of the zoning ordinance and the restrictive covenant, there exists no necessity for us to address the issue of the enforceability of the restrictive covenant or the issue of the constitutionality of either the zoning ordinance or the restrictive covenant. A court will not pass on the constitutionality of a statute if the particular case before it may be decided without doing so. *San Antonio General Driver's, Helpers Local No. 657 v. Thornton*, 156 Tex. 641, 299 S.W.2d 911 (1957). A court will not consider a constitutional issue if the matter can be resolved on another basis. *Horton v. Horton*, 625 S.W.2d 78 (Tex.App.—Ft. Worth 1981, writ ref'd. n.r.e.); *Texas State Board of Public Accountancy v. Fulcher*, 515 S.W.2d 950 (Tex.Civ.App.—Corpus Christi 1974, writ ref'd. n.r.e.). Therefore, we decline to consider appellants' contentions regarding the enforceability of the restrictive covenant and the constitutionality of the zoning ordinance and the restrictive covenant.

In their eighth point of error, appellants assert that the trial court erred in awarding attorney's fees to the Subdivision Plaintiffs because the statute, which authorizes such an award, is unconstitutional as being violative of federal equal protection and state equal protection and due process guarantees. In their ninth point of error, appellants assert that the trial court erred in awarding monetary damages to the Subdivision Plaintiffs, who allegedly failed to "plead and seek" such damages.

However, by having sustained appellants' second and third points of error, we have concluded that the trial court's findings that the use of appellants' property violated both the zoning ordinance and the restrictive covenant were improper bases for the permanent injunction granted by the trial court in its judgment; therefore, the trial court erred in awarding attorney's fees and monetary damages, as well as in granting the permanent injunction. We need not consider appellants' eighth and ninth points of error.

We REVERSE the judgment of the trial court and order that the permanent injunction be dissolved.

YOUNG, J., not participating.