PERMIAN BASIN CENTERS FOR MENTAL HEALTH AND MENTAL RETARDATION, and James E. Lipham, Jr. and Sara Lipham, Appellants,

v.

Barney L. ALSOBROOK and Elzabelle W. Alsobrook, Appellees.

No. 08–86–00075–CV.

Court of Appeals of Texas, El Paso.

Dec. 31, 1986.

Rehearing Denied Feb. 18, 1987.

Diane G. Shisk, Advocacy, Incorporated, Austin, for appellants.

G. David Smith, Odessa, for appellees.

Before SCHULTE, ARMENDARIZ and FULLER, JJ.

OPINION

SCHULTE, Justice.

This case concerns the enforcement of a restrictive covenant contained in a deed. Appeal is from the judgment prohibiting Appellants from operating a family home in Odessa, Texas, for six mentally retarded adults. The trial court, without a jury, held that the covenant would be violated by the proposed use. We reverse and render.

On August 31, 1985, Permian Basin leased the Liphams' home in the Parker Heights Addition of Odessa, Texas, for use as a residential family home for six mentally retarded adults. The house is a 2,048 square foot, single-story, single-family dwelling, similar to the surrounding homes in the Parker Heights Addition. It has four bedrooms, one and one-half bathrooms, a single kitchen, a large den/living room, a utility room and a fenced backyard. Permian Basin planned to make improvements to the house such as adding another full bathroom and a shower to the existing half bathroom, installing stormdoors, painting, replacing wallpaper, replacing the fence and landscaping the lot.

Appellants proposed to use the house as a family home for the six retarded persons and two houseparents; the house would function as a single housekeeping unit, that is, household chores would be shared, meals would be planned, prepared and eaten together, and leisure activities would be enjoyed together. The houseparents would have one bedroom and the six residents would share the remaining three bedrooms, two to a room, and would be responsible for keeping their rooms orderly. The common areas of the house would be shared by all. The evidence further showed that the purpose of such a group or family home was to provide normal daily living experiences to improve the residents' community living skills by allowing the residents the chance to perform such tasks as grocery shopping, lawn mowing, bill paying, and also to learn to use community

resources such as libraries, buses and churches, and to work in workshops or at competitive jobs. These experiences are helpful to retarded persons, especially in a supervised environment. Residents selected to live in the home would be chosen based upon their readiness for this level of community living.

In 1950, a restrictive covenant was placed on all property in the Parker Heights Addition. The adjacent landowners/Appellees relied upon sections of the following restrictive covenant to preclude the proposed use:

All lots in the tract shall be known and described as residential lots, except:

Lots 7 through 20, inclusive in Block 1 of said Addition, which lots are hereby specifically designated as commercial lots and may be used either for residential purposes or for any of the following commercial and business purposes only:

. . . . .

No structures shall be erected, altered, placed or permitted to remain on any residential building plot other than one detached single-family dwelling, not to exceed two stories in height, and a private garage for not more than two cars, together with outbuildings used in connection therewith, except that duplexes or single family dwellings may be erected upon the following lots only, in said addition, . . . .

Appellants read the covenant before entering into the lease, but did not believe that it would prohibit the proposed use as a family home. The Alsobrooks' petition alleged that Appellants' planned use of the home would violate the restrictive covenant and sought injunctive, declaratory and monetary relief. A temporary restraining order was issued by the trial court prohibiting the use of the property as a "family home," as defined in Tex.Rev.Civ.Stat.Ann. art. 1011n, sec. 2(4) (Vernon Pamphlet Supp. 1986). After trial, the trial court entered judgment finding that the deed restrictions would be violated by Appellants' proposed use of the home, and enjoining such use.

Findings of fact and conclusions of law were filed by the trial court, and in pertinent part concluded:

In making a determination of whether use is "single family", [as in "single-family dwelling"] this Court looked at two separate tests. First, there must be a private consensual arrangement by individuals to live as a household unit. Second, the burden on the property should not be unreasonably greater than would have been contemplated by those entering into the restrictive covenant.

The court then concluded that Appellants failed to meet either test.

Appellants' first point of error contends that the trial court erred in finding a violation of the restrictive covenant because the house in question is a single-family dwelling structure used for residential purposes as required by the restrictive covenant. The crux of Appellants' position is that the term "single-family dwelling," as used in the restrictive covenant, refers only to the type of structure that may be built on the property, that is, a house designed for a single family, and does not refer to the way in which the property may be used.

When dealing with a restrictive covenant, several principles, as announced by the Texas Supreme Court, must be applied to determine its effect on the properties so restricted. In *Baker v. Henderson*, 137 Tex. 266, 153 S.W.2d 465, 470 (1941), the court stated, "[r]estrictive clauses in instruments concerning real estate must be construed strictly, favoring the grantee and against the grantor, and all doubt should be resolved in favor of the free and unrestrictive use of the premises." Accord: *Southampton Civic Club v. Couch*, 159 Tex. 464, 322 S.W.2d 516, 518 (1959); *MacDonald v. Painter*, 441 S.W.2d 179 (Tex. 1969). While the intention of the original grantor, as expressed in the language of the restrictive covenant, ordinarily controls the covenant's construction, such covenants are not favored by the law and they will be enforced only when they are reasonable, confined to a lawful purpose, and when the language employed is clear and unambig-

uous. *Davis v. Huey*, 620 S.W.2d 561, 565–567 (Tex.1981). If an ambiguity exists, if the covenant is susceptible to two reasonable interpretations, or if there is any absence of clear limiting language, doubt must be resolved in favor of free and unrestricted use. *Southampton, supra.* This policy of construction against the grantor and in favor of free use of the property recognizes the utility of allowing unrestricted use of land whenever possible in order to adapt to changing economic, political and social conditions.

A restrictive covenant that is clear and unambiguous, as noted above, can be enforced as written, but it cannot be enlarged by interpretation. *Travis Heights Improvement Association v. Small*, 662 S.W.2d 406, 409 (Tex.App.—Austin 1983, no writ). Thus, the restrictive covenant in this case must be examined as it is written, given the language used its plain and ordinary meaning, to determine its scope. *Stephenson v. Perlitz*, 532 S.W.2d 954 (Tex. 1976).

The parties differ as to what is meant by the term "single-family dwelling." Appellants contend that the term refers only to the type of structure that may be built on the property, while Appellees claim that the term denotes not only the character of the structure but also the use which may be made of it. Appellees, in essence, claim that only single families can live in single-family dwellings in Parker Heights. Of the two interpretations, we view the one proposed by Appellants as the more reasonable and more in keeping with what was intended by the original grantor. The paragraph in which the term "single-family dwelling" appears deals with the character of structures that may be "erected, altered, placed or permitted to remain on any residential building plot." There is no mention in this or any other paragraph of the covenant that seeks to impose a single-family occupancy requirement. The only "use" provisions in the covenant distinguish between commercial and residential use and prohibit the use of outbuildings as residences. This same type of lack of clear express limiting language was determina-

tive in *Southampton, supra.* In that case, the Texas Supreme Court refused to read a prohibition against the renting of a room into a restrictive covenant when "[t]here is no language in the restriction here under review which specifically forbids the renting of a room or rooms." *Id.* at 518. To do so, said the Court, would be to violate the general rule requiring that all doubt be resolved in favor of free use of the property. In this case, the absence of a restriction on the use to which a single-family dwelling may be put requires that all doubt be resolved in favor of Appellants' proposed use of the property as a family home.

The issue of whether the term "single-family dwelling" in a restrictive covenant requires occupancy by only single families has never been decided by the Texas Supreme Court; however, two courts of appeals have addressed this issue. In *Collins v. City of El Campo*, 684 S.W.2d 756, 761–762 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.), the court held that the restrictive covenant and the term "single-family dwelling" did not require occupancy by a single family, and permitted use of the property as a family home for four unrelated mentally retarded men. The court noted that the restrictions on the use of the property appeared in the portion of the covenant under the heading "USES OF LAND," while the only references to "single-family dwelling" appeared in the "ARCHITECTURAL RESTRICTIONS." This, said the court, made it clear that "single-family dwelling" was intended to denote the type of house that would be allowed on the property, and since the house was admittedly designed as a single-family dwelling which was used for residential purposes there was no violation of the restrictive covenant.

Although there are no headings in the restrictive covenant before us, the paragraph in which "single-family dwelling" appears deals with only structural and architectural matters. To read in a restriction of use where one does not clearly and unambiguously exist would be contrary to

the *Southampton* case and the general rule resolving doubt in favor of free use.

The other case dealing with the same single-family use issue is *Shaver v. Hunter*, 626 S.W.2d 574, 576 (Tex.App.—Amarillo 1981, writ ref'd n.r.e.), cert. denied, 459 U.S. 1016, 103 S.Ct. 377, 74 L.Ed.2d 510 (1982). The *Shaver* court found the restrictive covenant to require single-family use and to prohibit a similar group of unrelated handicapped women from living in a group home. The *Collins* court distinguished the *Shaver* case based upon differences in the language in the restrictive covenants. *Collins, supra,* at 761. The covenant in *Shaver* was not set out in full in the court's opinion, but the court did note that the covenant provided that "all lots shall be used for residential purposes only and states that a 'residence shall be construed to be a single family dwelling.'" *Shaver, supra,* at 576. This mixture of a use requirement—residential purposes only—with a definition of residence, allowed the court to decide that "single-family dwelling" dictated both the structure of the house and the use that could be made of such house. In this case, there is no mixture of use and structural restrictions. The two are separate and distinct. We believe that the *Shaver* case is inapplicable and the *Collins* case applies here.

Simply put, the restrictive covenant in this case limits the use of the property to residential purposes, and the term "single-family dwelling" limits the residential use to single-family structures—that is, homes designed for single families as opposed to duplexes or apartment buildings. Appellants' proposed use of the home qualifies as a residential use and the home is admittedly a single-family dwelling. The proposed use in the Parker Heights Addition as a family home would not violate the restrictive covenant. Appellants' Point of Error No. One is sustained.

In view of our determination of Point of Error No. One, we need not consider the remaining points. The judgment is reversed and judgment rendered declaring that the restrictions are not violated by the proposed use, and further, that the injunction be dissolved.