**CITY OF COPPELL, Texas, Appellant,**

v.

**GENERAL HOMES CORPORATION, Appellee,**

No. 05–87–01392–CV.

Court of Appeals of Texas, Dallas.

Nov. 23, 1988.

Rehearing Denied Dec. 30, 1988.

Lawrence W. Jackson, Dallas, Mike A. Hatchell, Tyler, for appellant.

Dan S. Boyd, Robert R. Gibbons, Dallas, for appellee.

Before STEPHENS, STEWART and ROWE, JJ.

ROWE, Justice.

Appellee, General Homes Corporation, sued appellant, City of Coppell, Texas, to recoup certain water and sewer fees collected by Coppell. The trial court entered summary judgment against Coppell for $283,000.00 monetary damages, $36,147.76 prejudgment interest, and $70,000.00 attorney fees. The trial court also granted a declaratory judgment that the fees as charged to General Homes violated Texas statutes, Texas common law, and General Homes' vested rights. In four points of error, Coppell argues that the trial court erred: (1) by rendering summary judgment against Coppell for the fees; (2) by declaring that the fees as charged to General Homes violated Texas statutes, Texas common law, and General Homes' vested rights; (3) by rendering judgment against Coppell for attorney fees because the City is exempt from such awards; and (4) by assessing prejudgment interest against Coppell because the City is exempt from such awards. For the reasons given below, we overrule all of Coppell's points of error and affirm the trial court's judgment.

*Background*

In the 1970s, portions of land within Coppell's corporate limits were largely undeveloped and had no organized water or sewer service. Anticipating development of this land, Coppell consented to the creation of Coppell Municipal Utilities District No. 1 ("CMUD"). CMUD had authority to construct, own, operate, and maintain all equipment helpful or necessary to supply water and to dispose of wastes within the district. TEX.WATER CODE ANN. § 54.201(b)(1) & (2) (Vernon 1972). The area serviced by CMUD was wholly within Coppell's corporate limits. After CMUD's creation, Coppell continued to operate its own water and sewer system.

In the early 1980s, General Homes began to develop certain property in CMUD. The planned development included two residential subdivisions containing 673 homes.

Under an agreement with CMUD, General Homes constructed mains and service lines connecting to CMUD's water distribution system. By this time CMUD's water distribution system was integrated with Coppell's waterworks system. Water purchased from the City of Dallas flowed through Coppell's system into CMUD's water distribution system and then through the service lines to the residences built by General Homes.

General Homes also built service lines and mains to carry the sewage from the residences to CMUD's sewer collection system. The waste then emptied into CMUD's sewer trunk main and was transported to the Trinity River Authority for disposal. Except for twenty-four homes, none of the sewage from the development would ever pass through a Coppell-owned sewer pipe. With respect to twenty-four homes, however, sewage would pass through a ten-inch Coppell sewer main before emptying into CMUD's sewer trunk main. Coppell had previously agreed that in exchange for the right to connect to CMUD's sewer trunk main, CMUD users could connect to the ten-inch main.

Beginning in May of 1984, Coppell began to collect from General Homes sewer tap, water tap, and water meter fees. General Homes complained to Coppell but paid such fees under protest. In July of 1985, Coppell began to collect water availability and utility inspection fees. Again, General Homes complained but paid such fees under protest.

After exhausting its avenues of relief from Coppell's administration, General Homes sued Coppell to recover $283,000.00 of fees paid and to obtain a declaratory judgment that the fees "violate the Texas Constitution, Texas statutes, and Texas common law, violate General Homes' vested rights, are not authorized by law, are for services not provided by Coppell, and are unreasonable." Following discovery, General Homes moved for summary judgment, and the trial court granted its motion.

### Summary Judgment

In its first two points of error, Coppell complains that the trial court erred in granting summary judgment against Coppell and in declaring that the fees as charged violate Texas statutes, Texas common law, and General Homes' vested rights. Because Coppell has briefed and argued these two points together, we consider them together.

In our review of a summary judgment, we are constrained to follow the standards set forth in *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546 (Tex. 1985). These standards are:

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.

3. Every reasonable inference must be indulged in favor of the non-movant and doubts resolved in its favor.

690 S.W.2d at 548–49. Coppell correctly contends, however, that in granting summary judgment the trial court was confined to the specific grounds set forth in General Homes' motion. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 677 (Tex.1979); *Vendig v. Traylor*, 604 S.W.2d 424, 430 (Tex.Civ.App.—Dallas 1980, writ ref'd n.r.e.); TEX.R.CIV.P. 166a(c). In its motion, General Homes argued that it was entitled to judgment as a matter of law because:

A. Coppell assessed and collected "fees" from General Homes for which Coppell had no constitutional or statutory authority.

B. Coppell assessed and collected "fees" from General Homes for services that it did not provide.

C. Coppell assessed and collected "fees" from General Homes that relate to property that the Coppell Municipal Utility District No. 1 (the "CMUD") owns and not Coppell.

D. Coppell assessed and collected "fees" from General Homes for services already provided by the CMUD and for which the CMUD already charged and collected fees from General Homes.

Because the trial court did not state the grounds upon which it granted summary judgment, Coppell must show that each of the independent arguments alleged in the motion fails to support the judgment. *Netterville v. Interfirst Bank*, 718 S.W.2d 921, 922 (Tex.App.—Beaumont 1986, no writ); *McCrea v. Cubilla Condominium Corp.*, 685 S.W.2d 755, 757 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.); *Southerland v. Northeast Datsun, Inc.*, 659 S.W.2d 889, 891 (Tex.App.—El Paso 1983, no writ); *see Thomson v. Norton*, 604 S.W.2d 473, 476–77 (Tex.Civ.App.—Dallas 1980, no writ).

### Timeliness of Pleading and Response

■ Before addressing the merits of Coppell's contentions, we must first examine another issue raised by General Homes. In its first counterpoint, General Homes asserts that the trial court did not err in rendering summary judgment because Coppell had no timely filed pleading, response, or summary judgment evidence on file at the time of the hearing. General Homes suggests that we can affirm the summary judgment on this basis alone. We disagree. A summary judgment must stand on its own merits, and the nonmovant's failure to respond cannot supply by default the proof necessary to establish the movant's right. *City of Houston*, 589 S.W.2d at 678. Although we cannot affirm the judgment if we sustain General Homes' first counterpoint, we may be required to ignore Coppell's summary judgment evidence if it was untimely filed. Accordingly, we must consider that issue further.

■ Coppell filed its second amended answer, its brief opposing the motion for summary judgment, and several affidavits on August 17, 1987. The hearing took place on August 24, 1987. General Homes argues that Texas Rule of Civil Procedure 166a requires a full seven days between the filing and the hearing and that there-

fore Coppell's filing was untimely. On the other hand, Coppell argues that filing on the seventh day before the hearing satisfies the rule. *Citing Volvo Petroleum, Inc. v. Getty Oil Co.,* 717 S.W.2d 134, 138 (Tex.App.—Houston [14th Dist.] 1986, no writ). However, because General Homes did not file a motion to strike these documents and the trial court did not strike them sua sponte, General Homes has failed to preserve this complaint and may not now contend that these documents were not properly before the trial court. *Brooks Fashion Stores, Inc. v. Northpark Nat'l Bank,* 689 S.W.2d 937, 940 (Tex.App.—Dallas 1985, no writ); *see* TEX.R.APP.P. 52(a). Accordingly, we overrule this counterpoint.

### The Fee Ordinances

In support of the summary judgment, General Homes first argues that Coppell never passed any ordinances authorizing Coppell to assess or collect the disputed fees from General Homes. General Homes contends that in the absence of any enabling ordinances, Coppell's collection of the fees violated Texas law. In response, Coppell points to four of its written ordinances, an administrative decision, and a fee schedule adopted by the City Council. Coppell claims that these are the sources of its authority to collect the disputed fees from General Homes.

 A municipality may purchase, construct, and operate a water system and may regulate such systems in a manner that protects the interests of the municipality. TEX. LOCAL GOV'T CODE ANN. § 402.001 (Vernon 1988). The only way a municipality can exercise this power or any other power is by and through its governing body acting in its official capacity. *See Cook v. City of Addison,* 656 S.W.2d 650, 657 (Tex.App.—Dallas 1983, writ ref'd n.r. e.); *Stirman v. City of Tyler,* 443 S.W.2d 354, 358 (Tex.Civ.App.—Tyler 1969, writ ref'd n.r.e.). The governing body of a municipality acts in its official capacity only by passing an ordinance or resolution. *See City of San Antonio v. Micklejohn,* 89 Tex. 79, 81–82, 33 S.W. 735, 736 (1895); *Stirman,* 443 S.W.2d at 358; *City of Floy-*

*dada v. Gilliam,* 111 S.W.2d 761, 764 (Tex. Civ.App.—Amarillo 1937, no writ).

Being a municipality, Coppell plainly had the statutory authority to assess fees in connection with its water and sewer systems. Further, it is undisputed in this record that at least those four ordinances pertaining to water and sewer fees which Coppell relies upon were duly enacted by its governing body acting in its official capacity. Thus, we first determine whether the provisions of those ordinances authorize Coppell to collect fees of the type which General Homes is contesting.

### Ordinances 180 and 274

 Coppell alleges that Coppell, Texas, Ordinance 180 (May 23, 1978) and Coppell, Texas, Ordinance 274 (Nov. 9, 1982) authorized it to collect water tap and sewer tap fees from General Homes. Ordinance 180 provides:

WR–3 APPLICATION FOR CONNECTION: It shall be unlawful for any person to make any connection to the mains or pipes of the Waterworks System without first making application to the City, stating fully the several and various uses for which water is wanted, giving the name of the property, the number of the lot and block, name of the street and house number. Upon the payment of the tapping fee, the Superintendent shall make, or have made, the necessary connections and furnish a curb stop box and curb cock, the cost of which is included in the tapping fee, and every premises not now equipped with the curb stop box and curb cock and connected with any water main, or being supplied with any water from the Waterworks, shall have a separate service connection, curb stop box and curb cock—installed by and at the expense of the owner of the premises. If the application is approved by the Superintendent of Waterworks, a permit will be issued. All fees and charges shall be paid for at amounts and rates fixed by Section WR–14 of this Code.

\* \* \* \* \* \*

WR–14 TAPPING CITY MAINS

(A) Water: The tapping fee for connection with the Waterworks System shall be:

| | |
|---|---|
| ¾″ | $175.00 |
| 1″ | $200.00 plus cost of materials and labor |
| 1½″ | $250.00 plus cost of materials and labor |
| 2″ and over | Total cost of materials and labor |

\*　　\*　　\*　　\*　　\*　　\*

SR–1 SECTION 2. "SR" (SEWER REGULATIONS)

CONNECTION TO SEWER REQUIRED: All owners or occupants of buildings, or agents for the owners, situated in any section of the City where a sanitary sewer now exists, or where it may hereafter exist, and where the property line of the land on which any such building is situated approaches or extends to within one hundred feet (100′) of any such sewer are hereby required to construct or cause to be constructed suitable water closets on their property, and connect the same with the City sewer, under the supervision of the Plumbing Inspector. . . .

\*　　\*　　\*　　\*　　\*　　\*

SR–4 TAPPING CITY MAINS

(A) Sewer: The tapping fee for connection with the Sanitary Sewer System shall be:

| | | |
|---|---|---|
| (1) | 4″ | $150.00 |
| | 6″ and larger | Total cost of materials and labor |

Ordinance 274 amends Ordinance 180 by adding:

The owner of any property desiring to connect with the City Water Works System shall be responsible for opening the hole to the water main and leaving it open and protecting it until the water connection is made by City personnel.

\*　　\*　　\*　　\*　　\*　　\*

The owner of any property desiring to connect with the City Sewer System shall be responsible for opening the hole to the sewer main and leaving it open and protecting it until the sewer connection is made by City personnel, and in the event opening the hole to the sewer main involves crossing the street, the cost for this crossing will be added to the cost of the sewer tap.

Ordinance 274, §§ 1 and 2. Ordinance 274 also changes the tapping fee for connections with the Sanitary Sewer System. *See* Ordinance 274, § 4.

Coppell alleges that its water and sewer systems are interconnected with CMUD's systems. Coppell claims, therefore, that all users that connect with CMUD's systems are also necessarily connecting with Coppell's waterworks and sanitary sewer systems. As a result, Coppell argues that all CMUD users including General Homes fall within the purview of ordinances 180 and 274. In reply, General Homes asserts that the language of the ordinances contemplates assessing tapping fees only for actual connections to Coppell's mains to cover Coppell's cost in making such connections. According to General Homes' argument, since all but twenty-four of the General Homes-built residences are physically connected to CMUD's mains not Coppell's, the ordinances do not authorize Coppell to collect the tapping fees from General Homes.

Courts construe city ordinances by the same rules of construction as apply to statutes. *Mills v. Brown*, 159 Tex. 110, 316 S.W.2d 720, 723 (1958); *Collins v. City of El Campo*, 684 S.W.2d 756, 759 (Tex.App. —Corpus Christi 1984, writ ref'd n.r.e.); *Patterson v. City of Dallas*, 355 S.W.2d 838, 841 (Tex.Civ.App.—Dallas 1962, writ ref'd n.r.e.), *appeal dism'd*, 372 U.S. 251, 83 S.Ct. 873, 9 L.Ed.2d 732 (1963). In construing a city ordinance, the court's primary duty is to carry out the intentions of the municipal legislative body. *Bolton v. Sparks*, 362 S.W.2d 946, 951 (Tex.1962); *Collins*, 684 S.W.2d at 759; *Heard v. City of Dallas*, 456 S.W.2d 440, 444 (Tex.Civ. App.—Dallas 1970, writ ref'd n.r.e.). In determining an ordinance's purpose, the court must look to the plain language used therein and may not go beyond such language. *See Seay v. Hall*, 677 S.W.2d 19, 25 (Tex.1984); *Mills*, 316 S.W.2d at 723; *Government Personnel Mut. Life Ins. Co.*

**454**

*v. Wear,* 151 Tex. 454, 251 S.W.2d 525, 529 (1952). The court must examine the wording of the entire ordinance—not just one word or phrase therein—to determine the underlying intent of the municipal legislative body. *Collins,* 684 S.W.2d at 759; *see Citizens Bank v. First State Bank,* 580 S.W.2d 344, 348 (Tex.1979). The court should give the language used in an ordinance its ordinary meaning and, if it is capable of more than one meaning, should give it the meaning that will carry out the manifest purpose of the ordinance. *See Citizens Bank,* 580 S.W.2d at 348; *Collins,* 684 S.W.2d at 759; 22 I. SINGER, MUNICIPAL LAW AND PRACTICE § 389 (Texas Practice 1976).

Ordinance 180 prohibits any connection to Coppell's waterworks system without first applying to the City. It sets out the duty of the superintendent to make the necessary connections and to furnish certain equipment. The ordinance notes that the cost of the required equipment is included in the tapping fee. Some of the tapping fees are partly determined by the cost of materials and labor. The ordinance further mandates that any building situated within 100 feet of a Coppell sewer must connect to that sewer. One of the tapping fees for sewer connections is also determined by the cost of materials and labor.

When read in its entirety, it appears clear that the manifest purpose of the tapping fees is to defray Coppell's cost in making a connection to Coppell's water and sewer systems. The record shows, however, that all of General Homes' water connections and, with the exception of twenty-four homes, all of its sewer connections were made only to CMUD's systems. Although Coppell's and CMUD's systems are interconnected, Coppell incurs no material or labor costs when a builder connects to CMUD's systems. Since the purpose of the ordinance is to defray Coppell's costs, the plain language of Ordinance 180 authorizes tapping fees only for actual, direct connections to Coppell's water and sewer systems.

Ordinance 274 amends Ordinance 180 by requiring that the owner of property desiring to connect to Coppell's systems open a hole to the main and protect it until City personnel make the connection. If opening the hole involves crossing the street, Ordinance 274 adds the cost of the crossing to the sewer tapping fee. This new language further indicates that the manifest purpose of the sewer tapping fee is to reimburse Coppell for its cost in making a connection to its sewer main. Consequently, the plain language of Ordinance 274 authorizes Coppell to collect sewer tapping fees only for direct connections to Coppell-owned mains. Thus, we hold that neither Ordinance 180 nor Ordinance 274 authorized Coppell to collect any water tapping fees from General Homes. Furthermore, we hold that excepting the twenty-four homes neither ordinance authorized Coppell to collect sewer tapping fees from General Homes.

■ Twenty-four of the residences built by General Homes actually connect to Coppell's ten-inch sewer main. Ordinance 274, therefore, facially authorizes Coppell to assess a sewer tapping fee for those residences. Coppell, however, entered into a written agreement with CMUD regarding this sewer main pursuant to statutory authority. *See* TEX. LOCAL GOV'T CODE ANN. § 402.014 (Vernon 1988). Under the agreement, CMUD permitted Coppell to connect the main to CMUD's sewer trunk main, and Coppell agreed in exchange to allow CMUD users to connect to Coppell's ten-inch sewer main. The uncontroverted summary judgment evidence establishes that the twenty-four residences were connected to Coppell's main without charge pursuant to the agreement. [Affidavit of Paul W. Phy (filed July 7, 1987) p. 4]. Coppell has never contested this evidence or argued that these twenty-four homes should be treated separately. As a result, we conclude that Ordinance 274's effect on these twenty-four homes is academic.

*The Fee Schedule and Ordinance 341*

■ Coppell alleges that the Fee Schedule adopted by its city council on May 28, 1985, and Coppell, Texas, Ordinance 341

(Oct. 9, 1985) authorized it to collect water meter fees, inspection fees, and water/sewer availability fees. Ordinance 341 provides:

No person shall create a subdivision of land ... within the corporate limits of the City or within the extraterritorial jurisdiction of the City, without complying with the provisions of these regulations. All plats and subdivisions of any such land shall conform to the rules and regulations herein adopted.

## SECTION XIII—ACCEPTANCE OF THE SUBDIVISION

A. After completion of all items required in the plans and specifications, the Contractor shall submit to the City a bond in the amount of ten percent (10%) of the Contract amount guaranteeing workmanship and materials for a period of one year from the date of final acceptance by the City. The City Engineer shall verify that all items have been completed, including the filing of the plat and all related easements and documents, payment of pro rata fees for streets, water and sewer services, payment of the water and sanitary sewer availability charge, etc. The City Engineer, or his designated agent, shall conduct a final inspection of the project and, if all work is found to be acceptable, shall issue a Letter of acceptance. Any items of exception noted in the acceptance letter shall be immediately satisfied.

## SECTION XVI—FEES

The following schedules of fees and charges shall be paid to the City when any plat is submitted to the Planning and Zoning Commission or any other authorized board or agency of the City. Each of the fees and charges provided herein shall be paid in advance, except as provided herein, and the Planning and Zoning Commission or any other authorized board shall take no action until said fees and charges have been received by the officer designated herein. All final plats shall show sufficient information to calculate the fees described below.

\* \* \* \* \* \*

B. WATER AND SEWER AVAILABILITY FEE:

The City Manager shall determine the above fee based on the following schedule:

| 1. | Single Family/Duplex/Mobile Home | $440 per unit |
|---|---|---|
| 2. | Townhouse/Multi-Family | $300 per unit |
| 3. | Retail and Commercial | $120 per 1000 s.f. of building area |
| 4. | Industrial | $60 per 1000 s.f. of building area |
| 5. | Other non-residential uses | $120 per 1000 s.f. of building area |

50% of the above fee shall be paid prior to approval of the final plat by the City Council. The remaining 50% shall be paid prior to issuance of any building permit for the development.

C. WATER TAP FEES:

Generally, the developer shall install water meters and make the necessary water taps, using City-approved meters. An inspection fee of $100.00 per meter shall be charged. In special circumstances, the City Manager may vary the above procedure and fee to allow water taps by City forces.

D. SEWER CONNECTION FEES:

An inspection fee of $100.00 per building sewer connection shall be charged.

Ordinance 341 also contains numerous technical regulations governing all aspects of platting and constructing subdivisions within Coppell. Coppell's city council passed Ordinance 341 on October 9, 1985, to become effective immediately.

Coppell originally considered Ordinance 341 on May 28, 1985. Coppell declined to adopt the full ordinance at that time. Instead, by oral motion Coppell adopted only the Fee Schedule in Section XVI of the ordinance. General Homes attacks the validity of the Fee Schedule because Coppell adopted it by oral motion without a separate notice and hearing on the Fee Schedule itself. General Homes also notes that the Fee Schedule was not published and did not become part of the city council's minutes. Although the evidence may indicate otherwise, we shall assume without decid-

ing that the Fee Schedule was validly enacted and shall consider whether the Fee Schedule and Ordinance 341 applied to General Homes.

Ordinance 341 appears to be a typical subdivision ordinance prohibiting any person from creating a subdivision without complying with the regulations set forth in the ordinance. The ordinance comprehensively regulates all subdivisions created within Coppell's jurisdiction. The Fee Schedule is part of the ordinance that requires the payment of a water and sewer availability fee—one-half before the approval of the final plat and one-half before the issuance of any building permit. It also authorizes Coppell to collect inspection fees at the time a plat is submitted to the designated commission. Finally, one section of the ordinance provides that the City Engineer shall verify the payment of the fees before issuing a letter of acceptance. The plain language of the ordinance shows that it is intended to affect only subdivisions created after its effective date. In determining whether Ordinance 341 or the Fee Schedule authorized Coppell to collect part of the disputed fees from General Homes, the critical question is whether General Homes created its subdivisions before the effective date of this ordinance and Fee Schedule.

The record reflects that the General Homes development consists of two subdivisions—the Parkwood Subdivision and the Sherwood Park Subdivision. On June 14, 1983, Coppell approved the final plats for Section I of each subdivision. On June 12, 1984, Coppell approved the final plats for Section II of each subdivision. Coppell issued final letters of acceptance to General Homes for each section:

August 13, 1984—Section I, Sherwood Park Subdivision

Sept. 12, 1984—Section I, Parkwood Subdivision

April 30, 1985—Section II, Sherwood Park Subdivision

August 23, 1985—Section II, Parkwood Subdivision

The record shows that all of the fees recovered by General Homes were assessed against Sections I and II of the two subdivisions. We note that Coppell issued final acceptance letters to General Homes for each section before the effective date of Ordinance 341. We conclude that Coppell's approval of the final plats conclusively establishes that General Homes created these subdivisions before the enactment of the Fee Schedule and Ordinance 341. Accordingly, we hold that neither the Fee Schedule nor Ordinance 341 authorized Coppell to collect any fees from General Homes with respect to Sections I and II of the Sherwood Park and Parkwood Subdivisions.

*Ordinance 312 and the Administrative Decision of May 8, 1984*

Coppell alleges that an administrative decision of May 8, 1984, and Coppell, Texas, Ordinance 312 (July 24, 1984) authorized it to collect water meter fees [1] from General Homes. Although Ordinance 312 promulgates other water and sewer fees, Coppell claims that it did not collect such fees from General Homes. Coppell has cited Ordinance 312 solely to support its collection of the water meter fees. The section cited by Coppell provides that water meters "shall be purchased from the City." Ordinance 312, Appendix A, § IV(A)(5). The administrative decision purportedly set the price of water meters supplied by Coppell even before Ordinance 312 was adopted.

■ The record reveals that the City Administrator of Coppell made an administrative decision on May 8, 1984, that persons wishing to connect to the water system would be assessed the cost of the water meter. Coppell alleges that a directive was issued to builders regarding the water meters. The record does not include the actual text of this administrative decision or this directive.

■ The only way that a political subdivision of the state can act is by and through its governing body. *Cook v. City*

---

1. Coppell asserts that the term "water meter fees" is misleading because the "fee" was merely

reimbursement to Coppell for the actual cost of water meters supplied to General Homes.

*of Addison,* 656 S.W.2d 650, 657 (Tex.App. —Dallas 1983, writ ref'd n.r.e.). A city may act only in its official capacity, and statements by individual members of city government are not binding. *Cook,* 656 S.W.2d at 657. A city's governing body may act only by resolution or ordinance and may not delegate the right to make decisions affecting the transaction of city business. *Stirman v. City of Tyler,* 443 S.W.2d 354, 358 (Tex.Civ.App.—Tyler 1969, writ ref'd n.r.e.); *City of Floydada v. Gilliam,* 111 S.W.2d 761, 764 (Tex.Civ.App.—Amarillo 1937, no writ); *see City of San Antonio v. Micklejohn,* 89 Tex. 79, 81–82, 33 S.W. 735, 736 (1895). We conclude that the administrative decision of May 8, 1984, was not a proper exercise of Coppell's municipal authority. As a result, the administrative decision did not authorize Coppell to collect any fees whatsoever.

■ Ordinance 312, however, was adopted by Coppell's governing body. Like Ordinance 341, Ordinance 312 is a comprehensive subdivision ordinance applying to all subdivisions created within Coppell's jurisdiction. Similarly, we must determine whether Ordinance 312 applies to the Sherwood Park and Parkwood Subdivisions. Using the same analysis we applied to Ordinance 341, we find that Coppell approved the final plats of the two subdivisions before enacting Ordinance 312. Consequently, we conclude that Ordinance 312 does not apply to these subdivisions and hold that it did not authorize Coppell to collect any fees from General Homes with respect to Sections I and II of the Sherwood Park and Parkwood Subdivisions.

*Legality of the Fees*

After examining each of the sources of authority that Coppell cites, we conclude for the reasons stated above that none of them authorized Coppell to collect any of the disputed fees from General Homes. In the absence of some affirmative expression by Coppell's governing body, Coppell lacked constitutional and statutory authority to collect the fees in question. Since this ground independently supports the trial court's judgment, we need not address Coppell's attacks on the other arguments alleged in the motion for summary judgment. We overrule Coppell's first and second points of error.

*Prejudgment Interest and
Attorney Fees*

■ In its third and fourth points of error, Coppell complains that the trial court erred by awarding attorney fees and prejudgment interest against it because a city is exempt by law from such awards. We note that General Homes specifically requested prejudgment interest and attorney's fees in its pleadings and in its motion for summary judgment. Indeed, General Homes cited authorities in support of its request for attorney's fees in its summary judgment brief. In contrast, Coppell did not raise any exemption or other issue to defeat these awards either in its pleadings or in its trial court brief opposing the summary judgment—nor did Coppell raise the issue of a municipal exemption in its motion for new trial.

Texas Rule of Appellate Procedure 52(a) provides: "In order to preserve a complaint for appellate review, a party must have presented to the trial court a timely request, objection, or motion stating the specific grounds for the ruling he desired the court to make if the specific grounds were not apparent from the context." A point of error not preserved is not before the appellate court for review. *Allright, Inc. v. Pearson,* 735 S.W.2d 240, 240 (Tex.1987) (per curiam). This Court has repeatedly held that a party may not raise a complaint for the first time on appeal where the party failed to properly preserve the complaint in accordance with Texas Rule of Appellate Procedure 52(a). *See, e.g., Lynch v. Bank of Dallas,* 746 S.W.2d 24, 24–25 (Tex.App. —Dallas 1988, writ denied) (trial court's failure to consider motion for continuance waived); *1st Coppell Bank v. Smith,* 742 S.W.2d 454, 459 (Tex.App.—Dallas 1987, no writ) (error in admitting evidence waived); *Larrumbide v. Doctors Health Facilities,* 734 S.W.2d 685, 693–94 (Tex.App.—Dallas 1987, writ denied) (failure to award prejudgment interest waived).

458

Similarly, appellate review of a summary judgment is limited by Texas Rule of Civil Procedure 166a(c): "Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal." In a summary judgment proceeding, the movant need not negate possible legal issues that the nonmovant could have raised but did not. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678–79 (Tex.1979). The nonmovant must expressly present to the trial court those issues that would defeat the movant's right to recover and, failing to do so, may not later assign such issues as error on appeal. *Id.* at 679.

The record reveals that Coppell did not present to the trial court any request, objection, or motion opposing the award of prejudgment interest and attorney's fees on the ground that Coppell is exempt from such awards. Coppell never raised the issue of a municipal exemption in the summary judgment proceedings. We conclude that Coppell has not preserved these complaints and that we may not consider the issue of a municipal exemption as grounds for reversal. Accordingly, we overrule Coppell's third and fourth points of error.

We affirm the judgment of the trial court.