Charles A. CROSS, Appellant,

v.

DALLAS COUNTY FLOOD CONTROL
DISTRICT NO. 1, Appellee.

No. 05–88–00830–CV.

Court of Appeals of Texas,
Dallas.

June 7, 1989.

Charles F. Guittard, Dallas, for appellant.

James D. Blume, Suzanne S. Marsh, Dallas, for appellee.

Before STEWART, ROWE and CARVER [1], JJ.

ROWE, Justice.

Appellee Dallas County Flood Control District No. 1 sued appellant Charles A. Cross to rescind certain transactions whereby the District purchased permanent easements across Cross's land. The trial court granted summary judgment declaring the transactions void and rescinding them. In seven points of error, Cross complains that the trial court erred by granting summary judgment on each of the grounds specifically relied upon by the trial court. For the reasons discussed below, we reverse the trial court's judgment.

### Background

Cross owned certain land within the District across which the District proposed to erect certain improvements. After the District filed condemnation proceedings, Cross and the District entered into a settlement agreement. Under the agreement, the District received permanent easements on two tracts of Cross's land, and Cross received $1,307,954.20—$65,000.00 cash upon closing and fifty-one notes totaling $1,242,-954.20 due twenty-eight months from the date of the settlement. As part of the consideration for the easements, the District also agreed as follows:

(d) The Grantee District shall support any zoning request and building permit request of the Grantor to the City of Irving with regard to all or any portion of the subject tract.

(e) The Grantee shall provide District approved Engineering Drawings showing the ultimate right-of-way requirements on the subject tract for a Bear Creek Channel completely concrete-lined, which is capable of transporting anticipated future floods; and which also provides for the spanning or box culvert requirements for potential future installation.

(f) The District agrees that it has no objection to structures being built over the District's Right-of-Way on the subject tract, provided that adequate provision is made for the flow of water through the Channel of at least the rate of 47,000 CFS.

At the time of this transaction, the District was governed by a five member board of directors. Cross was serving as president of the board and did not vote on the transaction. Due to the death of another director, one seat was vacant. Consequently, an affirmative vote of all three remaining members was necessary to approve the transaction. All three voted to approve it.

Subsequently, Cross and the other three directors were defeated at the polls, and the new board of directors voted to institute this lawsuit. Following discovery, the

---

1. The Honorable Spencer Carver, Justice, retired, Court of Appeals, Fifth District of Texas at Dallas, sitting by assignment.

District moved for summary judgment on five grounds specifically set forth in its motion. The trial court granted summary judgment on three of these grounds and expressly overruled the other two.

### Article III, Section 50

In the first ground of its motion for summary judgment, the District argued that article III, section 50 of the Texas Constitution forbids the District from issuing promissory notes of the type issued to Cross. The District maintained that since the notes were an integral part of the settlement agreement, the agreement was illegal and constitutionally void. The trial court sustained this ground, concluding that because the District did not have funds at the time of issuance to pay the principal of the notes, such notes were an unconstitutional form of debt.

In his first point of error, Cross contends essentially that article III, section 50 was inapplicable because there is no summary judgment evidence of a transaction proscribed by that section. That constitutional section provides:

> The Legislature shall have no power to give or to lend, or to authorize the giving or lending, of the credit of the State in aid of, or to any person, association or corporation, whether municipal or other, or to pledge the credit of the State in any manner whatsoever, for the payment of the liabilities, present or prospective, of any individual, association of individuals, municipal or other corporation whatsoever.

In its brief on appeal, the District characterizes this section as constitutionally prohibiting it from creating "debt" generally. We disagree with the District's interpretation and conclude that there is no evidence in the record before us of any transaction proscribed by such section.

■ In the early days of the nation, it became common for state governments to aid business enterprises by granting land or loaning the money or credit of the state. TEX. CONST. art. III, § 50, interp. commentary (Vernon 1984). The practice came to involve very extensive and highly specu-lative subsidizing of ventures which caused considerable embarrassment. *Id.* Article III, section 50 was adopted to eliminate this practice. Essentially, article III, section 50 states that "the legislature may not 'give' the credit of the State to anybody, 'lend' the credit of the State to anybody, or 'pledge' the credit of the State for any-body." 1 THE CONSTITUTION OF THE STATE OF TEXAS: AN ANNOTATED AND COMPARATIVE ANALYSIS 225 (G. Braden ed. 1977) [hereinafter ANALYSIS]. Simply put, the State may not aid anyone: (1) by lending him money; (2) by providing him land, goods, or services on credit; or (3) by guaranteeing payment to a third party who lends him money or provides him land, goods, or services on credit. *Id.* Although this provision bars the legislature from extending the credit of the State to private individuals for private purposes, it does not prohibit the legislature from using the State's credit for public purposes. TEX. CONST. art. III, § 50, interp. commentary; 1 ANALYSIS at 225; *see Brazos River Auth. v. Carr*, 405 S.W.2d 689, 693 (Tex.1966); *State v. City of Austin*, 331 S.W.2d 737, 742–43 (Tex.1960); *City of Ar- ansas Pass v. Keeling*, 112 Tex. 339, 247 S.W. 818, 820 (1923); *Bexar County v. Linden*, 110 Tex. 339, 220 S.W. 761, 762 (1920).

■ The record before us contains no evidence that the transaction with Cross involved an extension of the State's credit to Cross for any private purpose. The promissory notes issued by the District to Cross were undisputedly given as consider- ation for the purchase of permanent ease- ments across Cross's land so that the Dis- trict could erect improvements to control floods. As such, the District merely en- tered into a contract to acquire the use of Cross's property for a legitimate public purpose. Article III, section 50 does not prohibit the use of the State's credit to acquire land for public use. *King v. Shep- pard*, 157 S.W.2d 682, 686 (Tex.Civ.App.— Austin 1941, writ ref'd w.o.m.). Based upon the record before us, we conclude that as a matter of law article III, section 50 did not forbid the District from issuing

the promissory notes to Cross. We sustain Cross's first point of error.

*Unconstitutional Debt*

In his second point of error, Cross complains that the trial court improperly granted summary judgment on the ground that the notes were an unconstitutional form of debt because the District did not set forth such ground in its motion for summary judgment. In reply, the District argues that it can rely on any ground raised by the summary judgment evidence presented to the trial court. The District further asserts that Cross was on notice as to the nature of its argument regarding the unconstitutionality of the notes and that the District cited article III, section 52 and article XVI, section 59(c) in support of this argument in its brief in support of its motion for summary judgment.[2] Thus, the District contends that the trial court could rely on such provisions and determine that the notes were an unconstitutional form of debt.

In summary judgment proceedings, the movant must specifically set forth in his motion for summary judgment each reason upon which he relies for judgment in his favor. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979); *Roling v. McGeorge*, 645 S.W.2d 886, 887 (Tex.App.—Tyler 1983, no writ); *Vendig v. Traylor*, 604 S.W.2d 424, 430 (Tex.Civ.App.—Dallas 1980, writ ref'd n.r. e.); TEX.R.CIV.P. 166a(c). The nonmovant has no obligation to respond to legal issues not raised in the motion for summary judgment itself. *See Avinger v. Campbell*, 499 S.W.2d 698, 702 (Tex.Civ.App.—Dallas 1973), *writ ref'd n.r.e. per curiam*, 505 S.W.2d 788, 789 (Tex.1974); *cf. City of Houston*, 589 S.W.2d at 677 (any expansion or restriction of the legal issues beyond those set forth in the motion must comply with TEX.R.CIV.P. 11). A summary judgment cannot be supported on appeal by any ground not expressly set forth in the motion for summary judgment. *Brooks Fashion Stores v. Northpark Nat'l Bank*, 689 S.W.2d 937, 941 (Tex.App.—Dallas 1985, no

writ); *Roling*, 645 S.W.2d at 888; *see City of Houston*, 589 S.W.2d at 671.

In this case, the District did not specifically contend in its motion for summary judgment that the promissory notes were an unconstitutional form of debt. Instead, it claimed specifically that article III, section 50 forbade the District from issuing notes of that particular type. We have already concluded to the contrary. Since the District did not specifically set forth the grounds that the notes constituted an unconstitutional form of debt or that the notes were unconstitutional under either article III, section 52 or article XVI, section 59(c), we cannot affirm the summary judgment on such grounds. We sustain Cross's second point of error. Because Cross's third, fourth, and fifth points of error attack only the grounds not set forth in the District's motion for summary judgment, we need not address them.

*Texas Water Code § 16.236*

In the second ground of its motion for summary judgment, the District urged that the settlement agreement required it to take action in violation of section 16.236 of the Texas Water Code. Section 16.236 provides:

(a) No person may construct, attempt to construct, cause to be constructed, maintain, or cause to be maintained any levee or other such improvement on, along, or near any stream of this state that is subject to floods, freshets, or overflows so as to control, regulate, or otherwise change the floodwater of the stream without first obtaining approval of the plans by the commission.

The District claims that the settlement agreement was illegal under this section because it required the District: (1) to construct a 200–foot concrete lined channel through Cross's land; (2) to permit Cross to construct improvements over the channel; and (3) to support any zoning change Cross may request from the City of Irving. The District asserted that because these items were not contemplated by its plan of

---

**2.** We note that this brief is not a part of the    record before us.

reclamation, the agreement required it to violate section 16.236.

In his sixth point of error, Cross argues that the trial court erred in granting summary judgment on this ground because there is no summary judgment proof to support such ground. Cross points out that the only evidence in support of this ground is the affidavit of John C. Slonaker. The relevant portion of the Slonaker affidavit states:

4. I am familiar with the Dallas County Flood Control District No. 1's current Plan of Reclamation and with all construction allowed and required by such plan.

5. The District's current Plan of Reclamation has been approved by the State of Texas and the City of Irving.

6. The current approved Plan of Reclamation does not call for construction of a concrete lined channel on Charles A. Cross'[s] property.

7. The current approved Plan of Reclamation does not contemplate construction of private improvements over the Bear Creek Channel within the boundaries of the District.

The District maintains that the Slonaker affidavit is clear and direct and that it is sufficient to support the summary judgment.

A contract to do a thing which cannot be performed without a violation of law is void. *Lewis v. Davis,* 145 Tex. 468, 199 S.W.2d 146, 148–49 (1947). Where the illegality does not appear on the face of the contract, it will not be held void unless facts showing its illegality are before the court. *Id.* at 149; *Peniche v. Aeromexico,* 580 S.W.2d 152, 156 (Tex.Civ.App.—Houston [1st Dist.] 1979, no writ). When two constructions of a contract are possible, courts must give preference to the construction which does not result in a violation of law. *Lewis,* 199 S.W.2d at 149; *Seaview Hosp., Inc. v. Medicenters of America, Inc.,* 570 S.W.2d 35, 39 (Tex.Civ.

App.—Corpus Christi 1978, no writ). A contract which may be performed in a legal manner is not rendered illegal simply because it may be performed in an illegal manner. *Lewis,* 199 S.W.2d at 149; *Estate of Grimes v. Dorchester Gas Producing Co.,* 707 S.W.2d 196, 203 (Tex.App.—Amarillo 1986, writ ref'd n.r.e.); *Wade v. Jones,* 526 S.W.2d 160, 163 (Tex.Civ.App.—Dallas 1975, no writ).

■ In order to prevail on its motion for summary judgment, the District had the burden of establishing that there was no genuine issue of material fact and that it was entitled to judgment as a matter of law. *See Town North Nat'l Bank v. Broaddus,* 569 S.W.2d 489, 494 (Tex.1978); *Major Investments, Inc. v. De Castillo,* 673 S.W.2d 276, 279 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.). Thus, the District had the burden of conclusively establishing that there was no way that it could perform its obligations under the settlement agreement in a legal manner. If the relevant provisions of the agreement can be given any construction not violating section 16.236, we cannot affirm the judgment on this ground.

The District's complaint concerns three provisions[3] contained in the easement Cross granted and incorporated into the settlement agreement. Our review of these provisions convinces us that the District could perform its obligation under each provision without violating section 16.-236. With respect to the District supporting any zoning or building permit request, section 16.236 does not prohibit such support. While it is true that Cross could theoretically make a request for a building permit to construct an improvement which would violate section 16.236, the District presented no summary judgment proof that Cross had made or would make such request. Even if he had, the District would not be prohibited from supporting the request since it is not the governmental entity charged with enforcing section 16.236.[4]

---

3. These three provisions are set forth *supra* p. 50.

4. The attorney general, at the request of the executive director of the Texas Water Commis-

sion, is responsible for enforcing this section. *See* TEX.WATER CODE ANN. § 16.236(c) (Vernon 1988).

If Cross attempted to construct such an improvement, he would be in violation of section 16.236, not the District.

With respect to the concrete-lined channel, Cross argues that the provision only requires the District to provide engineering drawings showing right-of-way requirements. Such interpretation is certainly in accord with the plain language of the provision and would not result in a violation of section 16.236. Even if we adopt the District's interpretation of this provision, the District presented no summary judgment proof that: (1) the stream through Cross's land is subject to floods, freshets, or overflows; (2) the channel would control, regulate, or otherwise change the floodwater of the stream; or (3) the Texas Water Commission had refused to approve the plans. At the very least, the District was required to use its best efforts to obtain the commission's approval. We find no proof in our record of any of these elements.

With respect to the District not objecting to structures being built over the District's right-of-way, the District presented no summary judgment proof that Cross had or would build any structure that would control, regulate, or otherwise change the floodwater of the stream. Indeed, the provision seems to anticipate this argument by requiring Cross to make adequate provision for the flow of water. Moreover, section 16.236 does not require the District to object. As stated previously, the District is not the entity charged with enforcing section 16.236. The District's approval also would not exempt Cross from the requirements of that section. *See* Op.Tex.Att'y Gen. No. H–1177 (1978). By not objecting, the District would not be in violation of section 16.236.

For these reasons, we conclude that there is no summary judgment proof that these provisions required the District to take action in violation of section 16.236. Accordingly, we sustain Cross's sixth point of error.

### *Statutory Conflict of Interest*

In the fourth ground of its motion for summary judgment, the District argued that one of the former directors who approved the Cross transaction, Tom Fleener, had a substantial interest in Cross's business affairs. Under our conflict of interest statute, a local public official is prohibited from participating in a vote on a matter involving a business entity in which the official has a substantial interest if it is reasonably foreseeable that an action on the matter would confer an economic benefit on the business entity. TEX.LOCAL GOV'T CODE ANN. § 171.003(a)(1) (Vernon 1988). A violation of this statute renders the action of the governing body voidable if the violator's vote was necessary to approve the action. *Id.* § 171.008. Since Fleener's vote was necessary to approve the Cross transaction, the District maintains that the settlement agreement was voidable.

In his seventh point of error, Cross asserts that at best the summary judgment proof merely raised a fact issue as to whether Fleener had a substantial interest in Cross's business affairs. A person has a substantial interest in a business entity under the statute if he received more than ten percent of his gross income for the previous year from the affected business entity. *See id.* § 171.002(a)(2). Cross concedes for the purpose of this appeal that Fleener's income for the year before the transaction was at most $24,398.40. Fleener admitted receiving $920.00 directly from Cross. The controversy on appeal focuses on two payments totaling $3,500.00 that the District alleges Fleener received from Cross.

By moving for summary judgment, the District accepted the burden of showing that there was no genuine issue of material fact. In deciding whether there is a genuine issue of material fact precluding summary judgment, we must accept as true evidence favorable to Cross. *See Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985); *City of Coppell v. General Homes Corp.,* 763 S.W.2d 448, 451 (Tex.App.—Dallas 1988, writ denied). We must also indulge every reasonable inference and resolve any doubts in Cross's favor. *See Nixon,* 690

S.W.2d at 549; *City of Coppell,* 763 S.W.2d at 451.

In light of these standards, the record establishes that Cross donated a cashier's check for $12,000.00 to the CAC Park Fund to be used to construct a neighborhood park. One of the District's former directors, Melvin Delaney, was chosen to act as administrator of the $12,000.00 for purposes of the park project. Cost Plus Builders, which Delaney owned in part, was to perform construction work on the park project at cost. Another one of Delaney's companies, Greenbelt Development Company, owned the land on which the park was built. Delaney deposited the $12,000.00 check in an account in Greenbelt's name. Fleener's business, Trinity West Financial, then invoiced Greenbelt for $2,500.00 and $1,000.00 for itemized services pertaining to records management. Greenbelt paid Trinity $3,500.00 from the account in which Delaney had deposited the $12,000.00 check.

Cross asserts that at best such proof raises a fact issue as to whether Fleener "received" the $3,500.00 "from" him. He points out in particular that there is no summary judgment proof that he participated in, or even knew about, any of the transactions between Greenbelt and Trinity. The District, on the other hand, alleges that it is undisputed that Cross was the original source of the funds used to pay Trinity. The District urges that this fact alone conclusively establishes that Fleener had a substantial interest in Cross's business affairs.

Section 171.002(a)(2) provides that an official has a substantial interest in a business entity if funds "received" by the official "from" the business entity exceed ten percent of his gross income for the previous year. The question arises here, however, as to application of this provision when the transfer of funds is indirect. Limiting this provision to funds directly received from the business entity would seriously undermine its effectiveness in deterring self-dealing among our public officials. On the other hand, the indiscriminate inclusion of all funds indirectly re-

ceived from a business entity—no matter how remote—would far exceed the scope of the statute. We conclude, therefore, that this statutory method for establishing a conflict of interest encompasses funds indirectly received from a business entity only to the extent that the entity participated in some significant way in causing the intervening party to engage in the particular transaction with the public official. Since we find no direct evidence in the record that Cross participated in any way in Greenbelt's decision to employ Trinity for records management, we conclude that the District's summary judgment evidence, while raising a fact issue, failed to conclusively establish that Fleener's receipt of the $3,500.00 in question was attributable to Cross within the purview of section 171.-002(a)(2). We sustain Cross's seventh point of error.

Because none of the grounds set forth in the District's motion and relied upon by the trial court can support the summary judgment, the trial court erred in granting summary judgment. We reverse the trial court's judgment and remand this cause for further proceedings consistent with this opinion.