**Carolyn D. BARTLETT and James D. Bartlett, Appellants,**

v.

**AMERICAN REPUBLIC INSURANCE COMPANY, Appellee.**

No. 05–91–01033–CV.

Court of Appeals of Texas, Dallas.

Dec. 3, 1992.

Rehearing Denied Dec. 30, 1992.

Brian P. Quinn, Ann Manning, Dallas, for appellants.

Scott Patrick Stollery, Franklin H. Perry, Dallas, for appellee.

Before STEWART, CHAPMAN and ROSENBERG, JJ.

**STEWART, Justice.**

Carolyn and James Bartlett appeal from a summary judgment rendered in favor of American Republic Insurance Company (American Republic) in their suit for breach of contract, breach of the common-law duty of good faith and fair dealing, and breach of an implied covenant of good faith and fair dealing. In three points of error, the Bartletts generally contend that the trial court erred in granting American Republic's summary-judgment motion because: (1) American Republic's motion failed to specifically address each cause of action raised by the Bartletts' pleadings; (2) fact issues exist as to American Republic's duty of good faith and the manifestation of Carolyn Bartlett's condition before the effective date of the policy. We affirm in part and reverse and remand in part.

## FACTUAL BACKGROUND

In early 1988, the Bartletts' insurance company, Great American Insurance Company, informed them that it no longer would provide health insurance. As a result, on February 1, 1988, the Bartletts applied for health-insurance coverage from American Republic.[1] The Bartletts indicated on the application that they sought coverage from American Republic because their existing carrier no longer would provide health and medical insurance. American Republic issued the Bartletts a policy effective April 1, 1988 (the policy).

On February 24, 1988, Carolyn visited Dr. Ronald North, a plastic surgeon, about having a "scoop-out" procedure and breast augmentation to prevent the possibility of breast cancer. Dr. North told Carolyn that she had a mass in her left breast. He recommended that she discuss the situation with another doctor. Carolyn contacted Dr. Rita Payne, her gynecologist, about the situation, but Dr. Payne recommended that Carolyn wait until June 1988 to have further tests or treatment because her December 1987 mammogram had disclosed no irregularity. On June 2, 1988, Carolyn un-

1. Carolyn was an authorized agent of American    Republic.

derwent a mammogram, and Dr. Payne detected the malignant cyst. Carolyn subsequently underwent a radical mastectomy and radiation and chemotherapy treatment.

After treatment for her cancer began, Carolyn submitted a claim under the policy. On October 26, 1988, American Republic advised the Bartletts that the policy was being rescinded because the Bartletts misrepresented in their application that they would cancel their existing coverage with Great American. The rescission operated retroactively and took effect on April 1, 1988. American Republic also refunded the $1,060.08 premium paid from April 1, 1988 to November 1, 1988. On January 6, 1989, Carolyn, as agent, received another letter from American Republic notifying her that the Bartletts' policy was being canceled because the mass in Carolyn's left breast was a preexisting condition excluded from coverage.

The Bartletts sued American Republic for: (1) breach of contract because of its refusal to pay their claims and the wrongful termination of the policy; (2) a twelve-percent penalty under section 3.62 of the Texas Insurance Code for failure to pay within thirty days after demand; (3) breach of the duty of good faith and fair dealing for refusing to pay Carolyn's claims because of an alleged fraudulent misrepresentation in the application and for denial of claims without a reasonable basis; and (4) treble damages for violations of the Deceptive Trade Practices–Consumer Protection Act (DTPA) and article 21.21 of the Texas Insurance Code for (a) refusal to pay the claims submitted when liability was clear, (b) breach of the duty of good faith and fair dealing, and (c) termination of the policy which it represented to be "guaranteed renewable for life." The trial court granted American Republic's motion for summary judgment and rendered a take-nothing judgment against the Bartletts. The Bartletts then perfected this appeal.

## PREEXISTING CONDITION CLAUSE

In their third point of error, the Bartletts contend that the trial court erred in granting American Republic's motion for summary judgment because fact issues exist as to the manifestation of Carolyn's condition before the effective date of the policy. In reviewing a summary-judgment record, this Court applies the following standards:

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.

3. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in his favor.

*Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). For the defendant, as movant, to prevail on a summary judgment, it must either disprove at least one element of the plaintiff's theory of recovery or plead and conclusively establish each essential element of an affirmative defense, thereby rebutting the plaintiff's cause of action. *International Union UAW Local 119 v. Johnson Controls, Inc.*, 813 S.W.2d 558, 563 (Tex.App.—Dallas 1991, writ denied). A matter is conclusively established if ordinary minds cannot differ as to the conclusion to be drawn from the evidence. *Triton Oil & Gas Corp. v. Marine Contractors & Supply, Inc.*, 644 S.W.2d 443, 446 (Tex.1982). In a summary-judgment case, the question on appeal is whether the summary-judgment proof establishes as a matter of law that there is no genuine issue of fact as to one or more of the essential elements of the cause of action. *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex.1970).

Insurance policies are contracts and, therefore, are subject to the rules of construction applicable to contracts generally. *Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663, 665 (Tex.1987). The plain language of the policy is given effect when the parties' intent can be discerned from the language. *Glover v. National Ins. Underwriters*, 545 S.W.2d 755, 761 (Tex. 1977). If, however, the policy language is

subject to two or more reasonable interpretations, the construction that affords coverage is adopted. *Id.*

■ American Republic moved for summary judgment on the following grounds: (1) the benefits are excluded because Carolyn's condition manifested itself before the policy was issued; and (2) Carolyn's condition was preexisting as defined by the policy. Because the trial court's judgment does not state the grounds upon which the summary-judgment motion was granted, the Bartletts must show that each ground alleged in the motion is insufficient to support summary judgment. *International Union UAW Local 119*, 813 S.W.2d at 565. Thus, if we determine that one of the grounds alleged supports the summary judgment, we affirm.

We first determine whether Carolyn had a preexisting condition under the terms of the policy. The policy provides the following:

SECTION 2 (Benefits)
We will pay 100% of a covered person's eligible expenses over the deductible amount up to the benefit limit.... Eligible expenses incurred must result from an injury occurring or sickness first manifested while this policy is in force.

\*  \*  \*  \*  \*  \*

SECTION 3 (Definitions)
A SICKNESS of a covered person means a condition, a state of ill health, or an illness, first manifested by a covered person while this policy is in force on a covered person. Each sickness begins at the inception of such sickness and ends after 365 days have passed during which time no benefits were payable under this policy nor medical treatment was received for such sickness.
A PRE–EXISTING CONDITION means:
  (A) the existence of symptoms which would cause an ordinarily prudent person to seek diagnosis, care or treatment within a 5 year period before the date coverage begins for a covered person; or

  (B) a health condition for which medical advice was given or treatment was recommended by or received from a doctor within a 5 year period before the effective date of the coverage of a covered person.

\*  \*  \*  \*  \*  \*

SECTION 7 (Exceptions)
PRE–EXISTING CONDITIONS LIMITATION ... We will not pay for pre-existing conditions or diseases not admitted on the application for coverage, subject to the TIME LIMIT ON CERTAIN DEFENSES provision. However, we will pay for those pre-existing conditions or diseases which are admitted on the application for coverage under this policy; but in no case will we pay for any conditions or diseases which are excluded by name or specific description.

Because the policy contains two alternative definitions of preexisting condition,[2] a finding that either definition is met results in an affirmance of the summary judgment.

The Bartletts contend that a material fact question exists as to Carolyn's awareness of the nature of her condition prior to the effective date of the policy. They point out that, although Dr. North detected a mass in Carolyn's left breast, Dr. Payne told Carolyn to wait until June to have a mammogram, and she did not learn until June that she had cancer. Under part (B) of the definition of preexisting condition, the state of Carolyn's actual knowledge of the true nature of her condition is immaterial. Nothing therein requires diagnosis of an illness as a prerequisite to the duty to disclose a health condition. A condition must be disclosed as preexisting after it is discovered and a doctor gives medical advice or recommends treatment regarding the condition. The medical advice may consist of the steps to be taken in the diagnosis of the condition. The evidence is undisputed that, before the effective date of the policy, Dr. North discovered and informed Carolyn of a health condition, a mass in her left breast.

**2.** *Wood v. Paulus*, 524 S.W.2d 749, 756 (Tex.Civ. App.—Corpus Christi 1975, writ ref'd n.r.e.)

("or" expresses an alternative).

The Bartletts further contend that, because Carolyn's December 1987 mammogram did not indicate a malignant tumor and because Dr. North indicated that he did not believe that the mass was malignant, there is no conclusive evidence proving as a matter of law that the cancer was a preexisting condition. They rely on *Porter v. American Family Mut. Ins. Co.*, 601 P.2d 659 (Colo.Ct.App.1979). There, during a routine pelvic examination, the insured's doctor discovered a "fullness" that he was unable to positively diagnose, although he suspected that it was a small ovarian cyst that appeared temporarily during ovulation. He advised the insured to have the condition checked at her next routine examination and that no treatment was necessary. At an examination six months later, the doctor made no further finding. Meanwhile, the insured changed insurance carriers. A subsequent examination revealed that the suspected cyst had grown, and the insured's doctor performed exploratory surgery, which revealed a benign condition. The insurance company contended that the surgical expenses fell within the policy's exclusion for "sickness first manifested, whether or not initially diagnosed accurately, prior to the date the person ... became an insured." *Id.* at 660. The doctor testified that the insured had no sickness at the time of the prior examinations and that he was unable to make any diagnosis or recommend any treatment at those times. *Id.* Also, the insured had no symptoms, pain, or discomfort. *Id.* The court held that the insurer failed to prove that the sickness had manifested itself and become apparent prior to the effective date of the policy. *Id.* The difference between the policy exclusion in *Porter* and part (B) of the definition of preexisting condition at issue here makes *Porter* inapplicable. Our exclusion is not limited to "sickness" but is defined using the broader term "health condition." Nothing in the definition of preexisting condition requires the health condition to be diagnosed as a sickness. Further, under part (B) of the definition of preexisting condition, the manifestation of Carolyn's cancer is immaterial. What is material is that Carolyn had a health condition prior to the effective date of the policy.

The Bartletts also contend that the issue of when Carolyn first discovered the condition is a fact question for the jury. They rely on *Hulse v. Blue Cross/Blue Shield of Florida, Inc.*, 424 So.2d 191 (Fla.Dist.Ct. App.1983). In that case, the definition of preexisting condition required the insured to be "aware of its symptoms." *Id.* at 192. The evidence conflicted as to when the insured discovered a cancerous tumor. *Id.* at 193. Here, part (B) of the definition of preexisting condition does not require awareness of symptoms. Further, the undisputed summary-judgment evidence establishes that Carolyn discovered a health condition (a mass in her left breast) at the examination by Dr. North in February 1988.

The relevant inquiry then is whether medical advice was given or treatment was recommended or received before the effective date of the policy. "Advice" means "an opinion or recommendation offered as a guide to action [or] conduct." WEBSTER'S ENCYCLOPEDIC UNABRIDGED DICTIONARY OF THE ENGLISH LANGUAGE 21 (1989). The evidence conflicts as to whether Dr. North told Carolyn to see a general surgeon or to see her gynecologist (Dr. Payne). This conflict, however, does not preclude summary judgment. The evidence is undisputed that Dr. North suggested that Carolyn consult another doctor, have a repeat mammogram to determine whether a biopsy should be performed, and to have a biopsy if it were necessary. He further suggested that, even if the mass were benign, Carolyn should consider the "scoop-out" procedure with immediate reconstruction using implants because the mass was so large.

Further, the fact that Carolyn received conflicting advice from Drs. North and Payne concerning the need for an immediate evaluation of the mass in her left breast does not preclude a finding as a matter of law that Carolyn had a preexisting condition. Medical advice, although conflicting, is still medical advice. Whether the medical advice conflicted is immaterial to whether Carolyn had a health condi-

tion for which medical advice was given or for which treatment was recommended. Although Carolyn may not have been able to disclose that she had breast cancer until after she had a mammogram in June 1988, which was after the effective date of the policy, she knew before the effective date of the policy that she had a health condition, a mass in her left breast, and Dr. North had given medical advice to consult a doctor for a mammogram to determine whether a biopsy of the mass should be performed and, in any case, to consider the "scoop-out" and reconstruction procedure since the mass was so large. We hold that Carolyn received "medical advice" about a health condition within the policy's definition of preexisting condition.

Finally, the Bartletts contend that "[t]he ambiguity of the terms of the policy itself creates an additional fact issue that must be presented to the trier of fact." This is the extent of the Bartletts' contention concerning ambiguity. This complaint is phrased as a conclusion without supporting argument or an explanation of the nature of the ambiguity. Thus, the Bartletts have failed to adequately direct this Court to the alleged error. *See* TEX.R.APP.P. 74(d) & (f); *cf. Allright, Inc. v. Pearson,* 711 S.W.2d 686, 688 (Tex.App.—Houston [1st Dist.] 1986), *aff'd in part and rev'd in part on other grounds per curiam,* 735 S.W.2d 240 (Tex.1987). Accordingly, we do not consider this contention.

We conclude that American Republic established as a matter of law that Carolyn had a health condition (a mass in her left breast) for which she received medical advice within five years before the effective date of the policy. Thus, Carolyn had a preexisting condition which was excluded from coverage. Accordingly, the trial court properly granted American Republic's motion for summary judgment on the Bartletts' breach-of-contract claims. We overrule the Bartletts' third point of error.

## DUTY OF GOOD FAITH AND FAIR DEALING

In their second point of error, the Bartletts contend that fact issues exist concerning American Republic's duty of good faith. The Bartletts assert that American Republic breached its duty by: (1) unreasonably failing to pay the claim submitted; and (2) acting in bad faith by canceling the policy as to both Carolyn and James when it had no authority to cancel James' coverage because of his wife's alleged preexisting condition and when American Republic never proved how the Bartletts defrauded it. On the other hand, American Republic contends that the trial court properly dismissed this cause of action because the absence of liability under the policy gave it a reasonable basis to deny the Bartletts' claim.

Insurers have a duty to deal fairly and in good faith with their insureds. *Aranda v. Insurance Co. of N. Am.,* 748 S.W.2d 210, 212 (Tex.1988); *Arnold v. National County Mut. Fire Ins. Co.,* 725 S.W.2d 165, 167 (Tex.1987). A cause of action for breach of the duty of good faith and fair dealing is stated when it is alleged that there is no reasonable basis for denial of a claim or delay in payment or a failure on the part of the insurer to determine whether there is any reasonable basis for the denial or delay. *Arnold,* 725 S.W.2d at 167. Insurers have the right to deny invalid or questionable claims and are not subject to liability for an erroneous denial of a claim. *Aranda,* 748 S.W.2d at 213. Insurers that breach the duty of good faith and fair dealing, however, are subject to liability for their tortious conduct. *Id.*

As previously stated, Carolyn's condition fell within the policy's exclusion from coverage of preexisting conditions. Hence, American Republic established a valid basis for denying the Bartletts' claim. Thus, American Republic negated an element of the Bartletts' claim for breach of the duty of good faith and fair dealing based on its denial of the claim. *See Koral Indus. v. Security–Connecticut Life Ins. Co.,* 802 S.W.2d 650, 651 (Tex.1990) (per curiam) (showing of defense to payment of insurance contract negated any breach of good faith and fair dealing violations under the Texas Insurance Code and any actions for unconscionability under the DTPA). These

considerations cause us to likewise conclude that American Republic negated an element of the Bartletts' claim for breach of the duty of good faith and fair dealing based on its canceling the policy as to both Carolyn and James. *See Arnold,* 725 S.W.2d at 167; *Aranda,* 748 S.W.2d at 213; *Koral Indus.,* 802 S.W.2d at 651. We overrule the Bartletts' second point of error.

### FAILURE TO ADDRESS ALL CLAIMS

In their first point of error, the Bartletts contend that American Republic's motion for summary judgment failed to specifically address each cause of action raised by their pleadings. They contend that American Republic's motion addressed only their cause of action for refusal to pay a claim and did not address their claim for wrongful rescission of the policy. They contend that, regardless of whether American Republic had an obligation to pay the claims submitted, a question remained concerning American Republic's authority to cancel their entire policy and to refuse coverage for any other ailment.

In granting summary judgment, the trial court is confined to the specific grounds set forth in American Republic's motion. TEX. R.CIV.P. 166a(c); *City of Coppell v. General Homes Corp.,* 763 S.W.2d 448, 451 (Tex. App.—Dallas 1988, writ denied). American Republic's motion for summary judgment addressed the propriety of its refusal to pay Carolyn's claims connected with her treatment for breast cancer. As previously stated, American Republic established as a matter of law that Carolyn's claims under the policy fell within the policy's exclusion for preexisting conditions. Because American Republic established that it was not liable for Carolyn's claims under the policy, it likewise established that (1) the Bartletts were not entitled to recover a twelve-percent penalty under article 3.62 of the Texas Insurance Code[3] for American Republic's failure to pay the claim within thirty days after demand; and (2) the Bartletts' statutory claims based upon American Repub-

lic's refusal to pay Carolyn's claims were untenable. Accordingly, the trial court properly rendered a take-nothing judgment against the Bartletts on all their claims arising from American Republic's refusal to pay Carolyn's claims.

However, neither of American Republic's summary-judgment grounds addresses the Bartletts' claims that it wrongfully rescinded their entire policy. These causes of action were independent of the allegations arising from American Republic's refusal to pay Carolyn's claim. We conclude that the trial court erred in granting summary judgment against the Bartletts on their claims for wrongful rescission. TEX. R.CIV.P. 166a; *City of Coppell,* 763 S.W.2d at 451. We sustain the first point of error as to the Bartletts' wrongful-rescission claims.

We reverse that part of the trial court's judgment granting summary judgment on the Bartletts' wrongful-rescission claim and remand that cause for further proceedings consistent with this opinion. In all other respects, we affirm the trial court's judgment.

---

3. Act of June 7, 1951, 52nd Leg., R.S., ch. 491, 1951 Tex.Gen.Laws 868, 920, *repealed by* Act of May 27, 1991, 72nd Leg., R.S., ch. 242, § 12.-

01(2), 1991 Tex.Sess.Law Serv. 939, 1133 (Vernon).